THE MERCHANTS NATIONAL BANK OF CLINTON, Appellant, v. MARIA B. EYRE AND DELPHIENA EYRE.

**Homesteads:** ANTECEDENT DEBT OF HEIR: *Liability of Surety.* The liability of a surety is a debt, within Code, section 2985, providing that a homestead descending to issue is exempt from antecedent debts.

**Notes:** RENEWAL. Sureties on a note, on its maturity, executed a joint note to the payee, on the margin of which he made an endorsement to the effect that payment of the note would cancel the old note, which was attached. *Held,* that this was a renewal of their surety obligation and not the creation of a new and independent indebtedness.

*Appeal from Clinton District Court.*—HON. P. B. WOLFE, Judge.

FRIDAY, DECEMBER 16, 1898.

ACTION to subject certain real estate to the lien of a judgment. Defendants answered the petition. A demurrer to the answer was overruled, and, plaintiff electing to stand thereon, judgment was entered dismissing the petition. From this judgment the present appeal is taken.—*Affirmed.*

*Barker & McCoy* for appellant.

*George B. Phelps* for appellees.

WATERMAN, J.—I. The facts of this case, together with the claims of the respective parties, are conceded to be correctly set out in the brief of appellant, from which we make the following statement: One George Eyre died intestate on the twentieth day of March, 1895, residing at the time of his death upon lot 6, in block 30, in the town of Clinton, which, with the defendants, his wife and daughter, he had occupied as his homestead since September, 1889. The defendant Delphiena Eyre was his only child and heir. Some time prior to March 14, 1895, Eyre had borrowed from the plaintiff in this case the Merchants' National Bank of Clinton, Iowa, one thousand five hundred dollars, giving to it his promissory note. This note was renewed from time to time, the notes given in renewal being signed by the defendant Delphiena Eyre, as surety, she giving to plaintiff as collateral a note owned by her secured by a mortgage on property in the city of Clinton. On the fourteenth day of March, 1895, another renewal note was given, signed by George W. Eyre and the defendants Maria B. Eyre and Delphiena Eyre, payable in thirty days after date. After the death of George W. Eyre, this last note maturing, defendants, on the twentieth day of April, 1895, executed to plaintiff their joint note for one

thousand five hundred dollars, payable in ninety days after date, with interest at the rate of eight per cent. per annum after due. Defendants, at the time of executing this last note, requested the cashier of plaintiff to surrender the note of March 14th, which they had signed as sureties; this he refused to do, but made an entry upon the margin of the new note to the effect that "this note, being paid, cancels the note attached; signed by George W. Eyre," and fastened the two notes together. Both notes being unpaid, suit was brought by plaintiff against the defendants in this action upon the last note, and judgment recovered thereon, on the twenty-sixth day of November, 1895, in the sum of one thousand, six hundred and forty dollars and ten cents. After the death of George W. Eyre, he having left no other property than his homestead, his widow, Maria B. Eyre, elected to occupy said homestead for life, in lieu of her dower or distributive share therein, and this action is brought to subject the interest of the daughter Delphiena Eyre in said real estate to payment of the judgment.

Defendants, on the one hand, claim that this property, as the homestead of George W. Eyre, is exempt from plaintiff's judgment, under section 2985 of the Code, which provides that "the homestead descends to the issue of either husband or wife, according to the rules of descent, unless otherwise directed by will, and is to be held by such issue exempt from any antecedent debts of their parents or their own." Plaintiff, on the other hand, contends that, while the property in question was the homestead of said George W. Eyre prior to the creating of the indebtedness by him to plaintiff, and therefore, under the statute, would be exempt from the debt against him, it is liable in the hands of his daughter to the payment of the judgment obtained, for two reasons: (1) She being only surety upon the notes given before her father's death, it was not an "antecedent debt" of hers, within the meaning of the statute. (2) That the note of April 20, 1895, was an entirely new, separate, and

distinct obligation, collateral to the other, and created a new debt as of that date.

Some courts hold the obligation of a surety not to be a debt, while others hold the contrary. For a collection of cases on the subject, see 8 Am. & Eng. Enc. Law, p. 988. The various holdings, we think, have been influenced by the circumstances under which the question has been presented. That a surety is a debtor is held in *Shane v. Francis,* 30 Ind. 93; *Berg v. Radcliff,* 6 Johns. Ch. 302; *Lankcton v. Wolcott,* 6 Metc. (Mass.) 305. The undertaking of the surety, after default of his principal, is primary. He may be sued alone. It will be seen, upon reference to the statement of facts, that the original obligation upon which Delphiena Eyre·was surety had matured, and that plaintiff held a note belonging to her as collateral security for her obligation. After Eyre's death, when the last note signed by him fell due, plaintiff did not surrender it, but took from defendants their note in addition thereto. This last transaction we regard only as an extension of time on an indebtedness that had existed long prior thereto. The statute is to be construed liberally in favor of homestead rights. *Schuttloffel v. Collins,* 98 Iowa, 576. It is not necessary for us to hold here that, as a general proposition, a surety is to be deemed a debtor. We are only required to say, and this is our holding, that he sustains that relation within the meaning of the homestead statute.

What we have said disposes, perhaps, of both propositions suggested by appellant, but upon the second one we wish to add something further. Defendants' matured obligation was, as already said, in plaintiff's possession at the time this last note was given. It was not canceled. All that defendants received, as consideration for the note then executed, was an extension of time on their pre-existing liability. That this was a mere renewal, and not the creation of a new and independent indebtedness, seems too clear for discussion.

Appellant cites authorities to show that the giving of the note sued upon did not operate as payment of the indebtedness to the bank, and it claims something for the fact that the old note was not surrendered, as is customary in case of a renewal.    It was not given up, we take it, because George Eyre, who had died in the meantime, was liable thereon, and the bank desired to retain its claim against the estate. While that note was not renewed as to George W. Eyre, it was as to these defendants.    It will not be seriously claimed by counsel for appellant that defendants could be held liable on both of these notes.    If they could not be, it is only because both securities represent one and the same debt, the last replacing the other, so far as the liability of the defendants is concerned.—AFFIRMED.