C. W. SMITH, Appellee, v. L. A. ANDREW, State Superintendent of Banking, et al., Appellants.

No. 39958.

NOVEMBER 21, 1929.

*Alan Loth,* for appellants.

*Milnor Hoel* and *G. E. Osmundson,* for appellee.

EVANS, J.—The defendant is the superintendent of banking, and as such is the receiver of the Farmers State Bank of Lake Mills, which went into receivership on December 25, 1927. The  plaintiff was one of its stockholders, holding 15 shares of stock. On March 28, 1928, the defendant-receiver obtained a judgment against this plaintiff, predicated upon his double liability as stockholder, under Section 9251, Code, 1927. An execution having been issued under the judgment, and returned *nulla bona,* the defendant was proceeding to levy upon the plaintiff's homestead. The plaintiff took by inheritance from his father, C. B. Smith, both the bank stock and the real property now claimed as a homestead. His father, C. D. Smith, died intestate in October, 1925. In a mutual division of the estate among the heirs, he took for his share the real estate in

question and the 15 shares of bank stock. The shares of stock were transferred to him by the other heirs, and the transfer was entered upon the books of the corporation on March 17, 1926. Quitclaim deeds of the real estate from the other heirs were delivered to him on May 11, 1927. On June 20, 1927, he moved his family upon the real estate, and occupied the same from that date as a homestead.

The question presented for our consideration is whether the debt upon which the judgment was entered, was contracted prior to the acquisition of the homestead. The contention of the appellee is that the liability of the stockholder prior to the insolvency of the bank was wholly contingent, and that the same did not become a debt until such insolvency. A distinction is urged, as between the terms "debt" and "liability," and especially between the terms "debt" and a "contingent liability."

The judgment already entered has adjudicated the liability of the plaintiff as a debtor. The question is, When did the *debt* originate? As a mere matter of definition, we have frequently  recognized the fact that the term "debt" is indefinite and variable in its meaning, and that the meaning to be attached thereto in a given case is largely dependent on its context. In other words, the term "debt," as used in the homestead statute, may vary in its meaning from that given to it in other contexts.

Although the double liability of a stockholder, in a sense, originates in the statute, we have held, nevertheless, that such statutory liability attaches only through the voluntary act of the stockholder in purchasing his stock, and that the liability is a contractual one. The contract of subscription to the stock becomes a contract of assumption of double liability, as provided by statute. Such was our holding in *Elson v. Wright,* 134 Iowa 634. We held therein that the obligation of a stockholder was analogous to that of a surety. The liability was contingent only in the sense that it was secondary. We said:

"These cases [cited] all hold that the double liability of the stockholders under constitutional and statutory provisions is a *contractual liability.* * * * 'The stockholder contracts with reference to these requirements *when he takes his stock,* and is

as much bound by them as if they were incorporated in a written agreement bearing his signature.' "

In *Hirning v. Hamlin,* 200 Iowa 1322, we said:

"The state * * * regulating banking corporations, might undoubtedly annex to the privileges granted such terms and conditions as it saw fit, and by the act of taking stock, the stockholder impliedly assented to them. Such terms and conditions thereby became obligatory upon the stockholder, contractual in their nature * * * [citations]. His provisional liability to creditors *was just as obligatory as his original liability to pay for his stock.*"

In *Baird v. Cole,* 207 Iowa 664, we said:

"The superadded liability of a stockholder created by the statute is, under the laws of North Dakota, as well as the laws of this state, contractual in character."

These pronouncements have much support from other jurisdictions, including the Supreme Court of the United States. In *Richmond v. Irons,* 121 U. S. 27, 55, it was held:

"Under that act the individual liability of the stockholders is an essential element in the contract by which the stockholders became members of the corporation. It is voluntarily entered into by subscribing for and accepting shares of stock. *Its obligation becomes a part of every contract, debt and engagement of the bank itself, as much so as if they were made directly by the stockholder, instead of by the corporation. There is nothing in the statute to indicate that the obligation arising upon these undertakings and promises should not have the same force and effect, and be as binding in all respects, as any other contracts of the individual stockholder.*"

And in *Bernheimer v. Converse,* 206 U. S. 516, it was held:

"It may be regarded as settled that, upon acquiring stock, the stockholder incurred an obligation arising from the constitutional provision, contractual in its nature, *and as such, capable of being enforced* * * *. The obligation of this contract binds the stockholder to pay to the creditors of the corporation an amount sufficient to pay the debts of the corporation which its

assets will not pay, up to an amount equal to the stock held by each shareholder. That is his contract * * *. Any statute which took away the benefit of such contract or obligation would be void as to the creditor; and any attempt to increase the obligation beyond that incurred by the stockholder would fall within the prohibition of the Constitution [against impairing the obligation of contracts]."

In view of our own precedents, we must hold that the liability incurred by the stockholder was contractual, and that it originated as a part of the contract of purchase of the stock.

It appears also that we have, in one instance, defined the word "debt," as used in a homestead context. *Merchants Nat. Bank v. Eyre,* 107 Iowa 13. In that case, the judgment debtor had taken the homestead of her parents by descent. Under the statute, it passed to her exempt from the debts of her parents and from her own *antecedent* debts. Prior to her acquisition of the homestead, she had become surety on a note. After her acquisition of the homestead, the principal on the note defaulted, and a judgment was obtained against her, as surety. The judgment creditor sought to levy execution upon the homestead thus acquired. It was contended by the judgment creditor that the debt was not that of the surety, but that of the principal, at all times prior to the default of the principal. The question presented for determination was whether the obligation of a surety is to be deemed a debt while the principal is solvent and not in default. We held that the obligation of the surety was a debt from the beginning, and that, therefore, it was *antecedent* to the death of the parent. We said:

"It is not necessary for us to hold here that, as a general proposition, a surety is to be deemed a debtor. We are only required to say, and this is our holding, that he sustains that relation within the meaning of the homestead statute."

Having held, therefore, that the obligation of a stockholder to a superadded liability is in the nature of a suretyship, and is contractual, and having held that the liability of a surety is a debt, within the meaning of the homestead statute, we see no way of escape from saying that the debt evidenced by this judgment in the case at bar originated in March, 1926, with the pur-

chase of the stock, and therefore before the acquisition of the homestead.

The appellee places special reliance upon *Anderson v. Kyle,* 126 Iowa 666. It appeared in that case that the judgment defendants had conveyed land to the judgment plaintiff by warranty deed. Six years thereafter, a claimant established his right to a part of the land, whereby the covenant of warranty was breached, and the grantors became liable upon such breach. Judgment was obtained against them. The question was whether a debt arose when the covenant of warranty was made, or whether it arose only upon the breach of the covenant and the eviction of the grantee. We held to the latter proposition. Whether right or wrong, it presents no inconsistency with our holdings in the cases above cited.

We are not unmindful of the rule that requires us to construe the homestead statute liberally. But we must construe the statute, nevertheless, and the construction must be fair and rational, and not arbitrary. It is our conclusion, therefore, that the judgment debt was contracted prior to the acquisition of the homestead, and that the property is, therefore, subject thereto.

The decree below is, accordingly,—*Reversed.*

ALBERT, C. J., and FAVILLE, DE GRAFF, and KINDIG, JJ., concur.