HUNT, HILL & BETTS, Appellee, v. DANIEL V. MOORE, Appellant.

No. 40985.

1324

NOVEMBER 24, 1931.

REHEARING DENIED MARCH 8, 1932.

Hays, Baron & Mathews, for appellee.

D. F. Loepp, for appellant.

KINDIG, J.—Doctor Daniel V. Moore, the defendant-appellant, is a practicing physician and surgeon at Sioux City. Prior to May, 1915, however, this doctor practiced his profession at Yankton, South Dakota.

On or about May 1, 1915, the doctor became a passenger on the steamship Lusitania, and sailed for Europe. While on that voyage, the Lusitania was torpedoed by a German submarine and sunk. Appellant was lowered from the sinking Lusitania into a lifeboat, which broke to pieces when striking the ocean water. Hence, the appellant clung to a barrel, floating on the ocean for several hours, until he was finally rescued by a pass-

ing boat and taken to Queenstown, Ireland. Following the catastrophe, Dr. Moore was under medical care for approximately eighteen months, and was therefore unable to continue his medical practice for a considerable time. Many passengers were on the unfortunate Lusitania. Some were killed and others survived. The survivors formed a committee for the purpose of charting and proceeding upon a course of action in order to obtain damages for injuries received through the sinking of the Lusitania. This committee was voluntary, and acted without compensation. Communication was had between the committee and each survivor of the sunken Lusitania. It was the purpose of the committee, in thus communicating, to obtain a contract from each survivor, authorizing the committee to prosecute his claim against the German government. So, in May, 1916, the appellant signed such contract with the committee. That contract, so far as material, reads as follows:

"It is agreed between such persons [appellant and others] having claims arising out of the 'Lusitania' disaster as may sign this agreement, such claimants being hereinafter referred to as 'Claimants,' and the undersigned Committee consisting of Messrs. Ogden H. Hammond, Charles Rose and Henry A. Bruno, hereinafter referred to as the Committee, as follows:

"First: The committee undertakes without pecuniary compensation to use its best endeavors in advising such course of action as may be best calculated to secure the enforcement of such rights as the claimants may have both against the German government and the Cunard Steamship Company, Ltd., and to render such assistance as in its discretion it may be able to render, upon the understanding that in so doing it does not assume any liability whatsoever nor do the members thereof assume any individual liability whatsoever.

"Second: The claimants [appellant and others] agree as follows:

"(a) By the signing and delivery of this agreement the claimant does hereby file its claim with the Committee under the following terms and conditions and does agree on or before May 31st, 1916, to execute such further assignment or power of attorney to the Committee, or its authorized representative, as may be necessary, and to furnish to the Committee such items and data in connection therewith as the Committee may call for, to

supply all documents and evidence in their possession which the Committee may require, and to co-operate fully with the Committee in its efforts and proceedings.

"(b) The claimants [appellant and others] hereby authorize the Committee to retain attorneys to represent the Committee, and also to prosecute the claim or claims of the undersigned as their attorneys against the German government (either through the State Department of the United States or otherwise) or against the Cunard Steamship Company, Ltd., or both, as the claimant shall elect in writing at the foot of this agreement, and each claimant severally authorizes the Committee to pay as compensation for counsel so retained a portion of the ultimate recovery on each claim not to exceed in any case twenty (20) per cent with respect to such recovery as may be had from the German government, and not to exceed thirty-three and one-third (33 1/3) per cent of such recovery as may be had against the Cunard Steamship Company, Ltd. The compensation of counsel hereinbefore provided for shall include the compensation of any individual counsel already retained, and the division of such compensation between the counsel for the Committee and such individual counsel shall be arranged for by a separate agreement. * * *"

When signing the foregoing agreement, the appellant elected to proceed against the German government. Whereupon, the Committee commenced negotiations and worked out a plan for recovery in behalf of appellant against the German government. In due time, an agreement was reached between the United States and Germany concerning the Lusitania and other claims. Under this agreement, Germany recognized its liability on these American claims. These governments, in order to determine the amount of each claim, stipulated as follows:

"* * * The government of the United States and the government of Germany shall each appoint one commissioner. The two governments shall by agreement select an umpire to decide upon any cases concerning which the commissioners may disagree, or upon any points of difference that may arise in the course of their proceedings. Should the umpire or any of the commissioners die or retire, or be unable for any reason to dis-

charge his functions, the same procedure shall be followed for filling the vacancy as was followed in appointing him.''

The Survivors' Committee, before named, a voluntary organization working on behalf of the Lusitania survivors, must not be confused with the Mixed Claims Commission, organized by the American and German governments for the purpose of settling claims.

Claims were actually presented to the Mixed Claims Commission by an American and German agent. Consequently the Survivors' Committee, through its attorneys, only procured the claims, obtained the evidence, put it in proper form, and submitted it to the American agent, who in turn presented the same to the Mixed Claims Commission. According to the rules of procedure adopted by the American and German governments, witnesses should not appear personally before the Mixed Claims Commission except in exceptional cases. Ordinary evidence was to be introduced in the form of statements, documents, affidavits, etc.

After appellant signed the contract aforesaid, the Survivors' Committee, under that agreement, employed the plaintiff-appellee, attorneys and counselors of New York City, to represent appellant in the controversy with the German government. Immediately these attorneys procured from appellant his claim against the German government, and filed the same at once with the Mixed Claims Commission.

Appellant's claim is in two parts: First, property loss, amounting to $2,150; and second, personal injuries and loss of business, in the sum of $50,000. Such personal injuries, it is claimed by appellant, were ''sinus infection, neurosis, and cardiac distress.'' Thereafter, with due dispatch, the appellee, as appellant's attorneys, proceeded to obtain affidavits and other evidence in support of appellant's claim against the German government. Numerous affidavits were thus obtained, and all such evidence was properly filed with the Mixed Claims Commission. The American and German agents disagreed concerning the amount of appellant's recovery, and consequently, according to the contract between the American and German governments, the umpire decided the dispute as follows:

''Daniel Virgil Moore [the appellant], a physician and

surgeon, then 36 years of age, was a passenger on the Lusitania when that vessel was destroyed May 7, 1915, and sustained personal injuries and property losses. Dr. Moore is a graduate of the Medical College of Creighton University, Omaha, Nebraska, and also of Columbus Hospital, New York City. Prior to 1915 he had for a number of years actively practiced his profession at Yankton, South Dakota, and the country contiguous thereto. It is clear from the record that he was and is a surgeon of outstanding ability, had the confidence of the community in which he lived, as a physician and surgeon, as well as a man, and enjoyed a lucrative practice.

"When the Lusitania went down, Dr. Moore was in the water about two hours, suffered from exposure and shock, and immediately thereafter was confined under doctor's care and medical treatment for about a month. As a result of such exposure and shock he suffered from sinus infection, neurosis, and cardiac distress, for all of which he was professionally treated for a period of approximately 18 months. Because of his nervous condition he was not able to perform operations or resume the practice of his profession for a considerable time.

"The personal property which Dr. Moore had with him on the Lusitania and which was lost was of the value of $1,250.

"Applying the principles and rules heretofore announced in the decisions of this Commission to the facts as disclosed by the record, the Commission decrees that under the Treaty of Berlin of August 25, 1921, and in accordance with its terms, the Government of Germany is obligated to pay to the Government of the United States on behalf of Daniel Virgil Moore [appellant] the sum of ten thousand dollars ($10,000) with interest thereon at the rate of five per cent per annum from November 1, 1923, and the further sum of one thousand two hundred fifty dollars ($1,250) with interest thereon at the rate of five per cent per annum from May 7, 1915.

"Done at Washington February 21, 1924.

"Edwin B. Parker, Umpire."

A full quotation of that award is here set forth because it is claimed by appellant that the appellee did not properly perform its duty in setting forth evidence. Drafts were sent directly to the appellant for the amount of this award. He accepted them, but when appellee, as his attorneys, under the aforesaid

Survivors' Committee contract, sent its statements for services rendered, on the basis of twenty per cent of the award, appellant objected. In fact, he has paid them nothing. So this suit was commenced, to recover twenty per cent on the award.

Appellee's petition originally contained two counts, one on express contract, and the other on quantum meruit. During the trial, however, they dismissed the count relating to quantum meruit. As said in the preliminary statement, appellant raised many defenses and interposed a counterclaim. At the close of all the evidence, the district court dismissed the counterclaim, and directed a verdict in appellee's favor on the contract. Hence the appeal.

 I. It is said that the district court did not enter judgment on its dismissal of the count in appellee's petition relating to quantum meruit. Again it is claimed that the district court did not enter judgment on its order dismissing the appellant's counterclaim.

This matter was in no way brought to the attention of the district court before the appeal. Moreover, the court below dismissed count two of appellee's petition relating to quantum meruit, with prejudice. Also that court dismissed the counterclaim by express words during the trial. Even though judgment was not actually entered upon either order, the appellant can in no way be prejudiced on this appeal. If the appellee dismissed its count relating to quantum meruit, with prejudice, and the court so ordered, that ends the controversy on that proposition. On the other hand, suppose that the district court did not properly enter the dismissal of appellant's counterclaim. He is not prejudiced and cannot complain thereof here.

No ground for reversal, therefore, appears at this place.

██ II. The contention is made by appellant that the district court improperly directed a verdict in appellee's favor on the contract for attorney fees. Several reasons are assigned for this conclusion. They are: First, that the evidence is not so clear and conclusive that a court can say as a matter of law that the contract did exist; second, that in any event there is nothing to show that the Survivors' Committee, after fixing the attorney fees at twenty per cent, employed appellee on that basis; and, third, that the Survivors' Committee fixed the attorney fees in early May, while the contract was not signed until Oc-

tober. Therefore, the alleged agents acted, appellant claims, before they were authorized by appointment.

Consideration will now be given to those points together. Is the evidence clear and conclusive on the proposition that the Survivors' Committee under their contract with appellant fixed the attorney fees at twenty per cent, and hired appellee on that basis? After carefully considering the entire record, we are constrained to hold that the district court correctly directed a verdict so far as this contention is concerned. As before stated, appellant signed a contract with the Survivors' Committee. This contract in explicit terms authorized the Survivors' Committee to fix attorney fees at an amount not exceeding twenty per cent. Under the evidence the Committee met and fixed such fees at twenty per cent.

In his answer, appellant expressly admits his contract with the Survivors' Committee, and that acting thereunder they employed appellee to represent him in the claim against the German government. More than this, Russell I. Hare, who was secretary of the Lusitania Survivors' Committee, testified on behalf of appellee that the Committee employed the appellee as attorneys to represent appellant under the aforesaid contract. Further this witness said that the committee fixed fees for those attorneys at twenty per cent of the claims recovered. The fees thus fixed, the witness declared, were "as authorized in the form" of the agreement between appellant and the Survivors' Committee. Those fees, the witness declared, were thus fixed for the appellee. Again, the witness was asked this question:

"If in answer to the Fifteenth Interrogatory you state that the said committee (Survivors' Committee) did agree upon and fix as compensation for said attorney or attorneys so retained a percentage of the ultimate recovery against the German Government in each case, please state, if you know, what percentage of the ultimate recovery against the German Government in each case was fixed by the said committee as compensation for said attorneys. A. The amount fixed by the committee was twenty per cent."

Furthermore, the witness stated that the attorneys were hired under the terms of the contract. Apparently, then, the at-

torneys were hired on the twenty per cent basis, being the amount fixed by the committee under the contract.

Nevertheless, it is said by appellant that there is nothing in the record to show that the attorneys, when accepting the employment, did so on the basis of twenty per cent. Obviously the attorneys in accepting the employment were contracting with the Survivors' Committee, a representative body. Consequently, the appellee knew that the Survivors' Committee's authority was such only as previously obtained from appellant through express or implied contract. They accepted the employment accordingly. When so doing appellee had a right to demand fees fixed for them by the Survivors' Committee under the express contract. Fees thus fixed under the agreement amount to a contract between appellant and the Survivors' Committee in appellee's behalf.

██ Two parties are permitted, under our law, to contract for the benefit of a third. Appellant and the Survivors' Committee contracted between themselves for the benefit of appellee. Wherefore appellee, in view of such contract in its behalf, had a perfect right to accept such beneficence and later recover thereon. Tracewell v. Sanborn, 210 Iowa 1324; Durband v. Nicholson, 205 Iowa 1264; In re Estate of Youngerman, 136 Iowa 488; Hawley v. The Exchange State Bank, 97 Iowa 187. Such recovery can be made by appellee: First, even though it did not know beforehand that such contract existed in its behalf; or, second, although it was not a party to the original agreement. See cases above cited.

Regardless of the foregoing, it is further insisted by appellant that the appellee has not made out its case, because it is not clear when the Survivors' Committee fixed the attorney fees at twenty per cent. To put the thought differently, appellant says that the contract between him and the Survivors' Committee was signed in October. Therefore, appellant thinks the committee had no authority to fix fees for appellee in May. Exhibit Six, appellant says, furnishes a basis for this contention. That exhibit, according to the amended abstract, was not admitted into the record. Nothing, then, appears to contradict the contract itself concerning the time of its execution. The statement in the contract relating to date is as follows: "This ........ day of May, 1916." In response to a question by the district court,

the appellant through his counsel admitted that the contract was signed at the time indicated therein.

While upon the witness stand, appellant said nothing concerning the date on which he signed the contract. Mr. Hare, before named, while testifying in behalf of appellee, said the attorneys fees were fixed in the early part of May. Moreover, that witness declared that those fees were fixed for appellee, the attorneys employed under the contract, as stipulated in that document. Said witness, according to the record, testified from personal knowledge as distinguished from hearsay. He was in no way personally interested in the controversy. Obviously, then, the contract must have been signed by appellant in early May before the fees were fixed by the Survivors' Committee. Without more, it is clear that the evidence before the district court was uncontradicted, sufficient, and conclusive, and that tribunal properly directed a verdict. We declared in Kern v. Kiefer, 204 Iowa 490, reading on page 492:

"A verdict should be directed (in favor of a claimant): 1. Where but one reasonable conclusion can be drawn from the proof adduced. 2. Where the questions of fact are clearly established by unconflicting evidence. 3. Where there is no substantial evidence to overcome a prima-facie case. 4. Where by giving the opposite party the benefit of the most favorable view of the evidence the verdict against him is demanded."

To the same effect see First National Bank v. Dutton, 199 Iowa 468; Tucker v. Tucker, 138 Iowa 344; Johnson v. Buffalo Center Bank, 134 Iowa 731.

A new trial, then, cannot be allowed on the grounds last discussed.

III. Objection is also made by appellant because the district court excluded Exhibit Six, before mentioned.

Exhibit Six is a letter purported to have been written by appellee to C. J. B. Harris, Esquire, at Yankton, South Dakota. Clearly the letter was not identified either by direct or circumstantial evidence in such a way as to permit its admission into the record. According to the amended abstract, the exhibit in fact was not offered. An inquiry concerning it was made by appellant and an objection made by appellee. This objection

was sustained by the district court. Appellant proceeded no farther. There is no reversible error, then, at this place.

■ IV. Complaint again is made by appellant because the district court did not permit him to amend his answer during the trial. Such offer to amend was made by appellant after the appellee, as plaintiff, had introduced its evidence and rested, and the appellant had submitted part of his own evidence. The amendment sought to withdraw some of the admissions in the answer concerning the contract with appellee. Objection was made by appellee on the theory: First, that the amendment substantially changed the issues and was filed too late; and, second, that appellant had not shown diligence in presenting this pleading in the cause. Thereupon, the district court rejected the amendment.

On January 31, 1929, appellant filed his answer containing the admissions of appellee's contract with him. Then appellant filed amendments thereto on December 3, 1929, January 23, 1930, March 17, 1930, and September 19, 1930. Time after time during that period, appellant delayed the cause not only by his amendments, but also with motions for continuance. Motions for continuance were filed by appellant January 3, 1930, March 2, 1930, and April 2, 1930. The trial did not commence therefore, until October 9, 1930. Depositions had been taken by appellee in New York. Likewise, appellant had taken depositions. These depositions were taken and the case prepared, and, in fact, almost completely tried on the basis of the admissions contained in appellant's answer. Manifestly, after all those proceedings and delays, appellant did not show diligence in presenting the amendment. All the matters therein set forth were not new, but concerned facts which appellant had for many months.

Under all the circumstances, therefore, we cannot say that the district court abused its discretion in disallowing the amendment.

■ V. Again appellant bases error on the fact that the contract which he signed did not contain the signatures of the Survivors' Committee. Hence, he says that there, in truth, never was a completed contract. Plainly, however, appellant misapprehends the situation in this regard. His signature was placed on a duplicate original contract. One duplicate had been signed

by the Survivors' Committee and their signatures on that contract were mimeographed onto the duplicate original presented to and signed by the appellant. Provision eight in the duplicate original signed by appellant contains this stipulation:

"It is specifically understood and agreed that this agreement which is a duplicate of the one *signed* (the italics are ours) by the Committee shall be binding upon the claimant when signed by the claimant."

After signing the contract, the appellant returned it to the sender, and therefore the Survivors' Committee then had both duplicate originals. The two documents together constitute a completed instrument. In his pleadings, appellant admitted that the contract was completed by signature and delivery, because he concedes that the Committee acted under the completed agreement in employing appellee.

Wherefore, there is no reason for reversal arising out of this alleged error.

VI. Finally, a contention is made by appellant that the district court erred in dismissing his counterclaim.

Appellant, through the counterclaim, sought to recover judgment against appellee in the sum of $40,000 because of its alleged negligence in handling his claim against the German government: that is to say, appellant asked $50,000 of the German government for his personal injuries. As before explained, the commission allowed only $10,000. Therefore, appellant feels he is entitled to compel appellee to pay him the remaining $40,000 claimed.

It is not just clear in what respects appellant claims appellee was negligent, but it seems that he charges it with carelessness: First, in losing affidavits concerning his injuries; second, in not dictating the proper subject matter into said affidavits regarding appellant's heart and other injuries; and, third, in that the affidavits did not contain all available material concerning the extent of appellant's medical practice and the resulting loss because of his injuries. So, appellant argues that the district court erred in not permitting the jury to pass upon the issues raised by the counterclaim.

Although it appears to be true that the appellee temporarily mislaid some affidavits forwarded to it by appellant, later, how-

ever, the papers were found and duly filed with the Mixed Claims Commission. No possible prejudice to appellant arose because of the comparatively short delay on appellee's part in finding the affidavits. Regardless of the delay, the affidavits fully served their purpose before the Mixed Claims Commission. Apparently the Mixed Claims Commission fixed a date on which all affidavits were to be filed, but later the Commission extended the date on several occasions. Appellant's affidavits, then, were all before the Commission before the award was made against the German government on his personal injuries. Many affidavits as before stated, were filed by appellee with the Mixed Claims Commission. These affidavits were made by physicians and others who knew appellant. Each affidavit set forth the extent of appellant's injuries. Those affidavits stated that because of appellant's exposure in the cold ocean water and exhaustion caused by his physical effort to swim, there developed sinus infection, neurosis, and cardiac distress. Just how these affidavits could have been made more emphatic and extensive in this regard does not appear. Appellant's claim under his own affidavit was made for $50,000. Witnesses, through the affidavits, testified that appellant earned in his practice approximately $2,000 a month. All those facts were before the Mixed Claims Commission.

The German representative contended that appellant's sinus trouble was occasioned because of a decayed tooth. It is to be remembered that the American and German agents disagreed over the amount which appellant should recover, and the dispute was determined by the umpire. According to the umpire's decision, there must have been before the Mixed Claims Commission an abundance of evidence concerning the standing and reputation of appellant as a physician and surgeon, the extent of his practice, and the loss thereto because of his injuries. Likewise, the judgment of the umpire clearly indicates that much evidence was before the Mixed Claims Commission in regard to the personal injuries suffered by appellant. There is nothing in the record to indicate that the damages would have been more had appellee placed the alleged additional subject-matter in the affidavits. Appellee and the Survivors' Committee, it is to be remembered, did not appear before the Mixed Claims Commission, but rather that Commission and the attor-

1336

neys prepared the evidence which was submitted to the American agent, who, in turn, handled appellant's claim before the Mixed Claims Commission. During the time this evidence was being procured, there was much correspondence between appellant and the appellee, and at no time when the various affidavits were being obtained did the appellant in any way suggest to appellee that they were not sufficient or that amendment should be made thereto in any way.

Consequently there is no ground here justifying reversal.

Other matters are discussed, but they are not of such nature as to change the result.

Wherefore, the judgment of the district court should be, and hereby is, affirmed.—Affirmed.

FAVILLE, C. J., and EVANS, ALBERT, and GRIMM, JJ., concur.