Hunt, Hill & Betts, a partnership, Appellant, v. Daniel V. Moore, Appellee.

No. 42684.

December 28, 1934.

Rehearing Denied April 5, 1935.

Hays, Baron & Mathews, for appellant.

D. F. Loepp and Gill & Gill, for appellee.

Mitchell, C. J.—Early in the month of May, 1915, the world was shocked to hear of the sinking of the Lusitania by a German submarine. One of the passengers on this great ocean liner was a Dr. Moore. He was fortunate enough to get into a lifeboat, which was lowered from the sinking ship, but shortly thereafter the lifeboat was smashed to pieces. Dr. Moore, clinging to a barrel, floated in the ocean for several hours until he was rescued. As a result of

the experience, he received a severe shock to his nervous system and was injured. He also lost all of his personal property.

Out of this tragedy arises the lawsuit which now confronts us.

In May of 1916 Dr. Moore, the appellee in this case, signed a contract with what was known as the "Survivors' Committee," authorizing such committee to employ counsel to prosecute his claim against the German government. Said contract also authorized the committee to fix the fee for such counsel at not more than 20 per cent of the amount recovered. Shortly after the appellee signed this contract and acting thereunder, the committee employed the appellant law firm to prosecute appellee's claim against the German government, and fixed the compensation of the law firm of Hunt, Hill & Betts at 20 per cent of the amount recovered. The attorneys immediately accepted such employment and actively engaged in the work of preparing and handling appellee's claim along with the claims of other victims of the Lusitania disaster. In the year 1920 the appellee acquired homestead real estate and has owned the same continuously since then. On February 21, 1924, the Mixed Claims Commission adjudged that Germany should pay the United States on behalf of appellee $10,000, with interest at 5 per cent from November 1, 1923, for personal injuries, and $1,250, with interest at 5 per cent from May 7, 1915, for property loss. The payment of this amount of money was not made until September 24, 1928, when the appellee received a check for $14,570.31. As is often the case, the appellee did not pay his attorneys, and the appellants Hunt, Hill & Betts commenced an action to recover fees under their contract. On October 15, 1930, judgment was entered in the office of the district court of Woodbury county, Iowa, for 20 per cent of the recovery, with interest at 6 per cent to the date of the judgment. This judgment was appealed by the appellee to this court and was affirmed, and procedendo was transmitted to the district court showing such affirmance. See Hunt, Hill & Betts v. Moore, 213 Iowa 1323, 239 N. W. 112.

On the 16th day of December, 1930, appellants commenced this present action to subject the real estate, claimed by appellee to be his homestead, to the lien of said judgment. On May 21, 1932, appellee filed his voluntary petition in bankruptcy, and on November 17, 1933, he was discharged in bankruptcy, the creditors receiving nothing. Appellants filed their claim in the bankruptcy proceeding as a secured claim, and it was allowed as a secured claim. The

bankruptcy court set apart the real estate here involved as appellee's homestead on January 9, 1933.

The lower court in this action denied the relief asked for by the appellants, and from that judgment the appellants have appealed to this court.

There is but one question in the case before us, and that is, "When was the debt contracted upon which the judgment was obtained? Was it contracted prior to 1920, when the appellee purchased the homestead involved in the case at bar?" The contract which the appellants had with the appellee was a contract for a contingent fee, stipulated to be paid to the appellants for their services in conducting the claim against the German government for the appellee only in case that the appellants were successful in securing an allowance or judgment against the German government. There was no way that there could be ascertained the amount which the appellee would owe the appellants until the claim of the ap· pellee against the German government was allowed in the proper tribunal. The record shows without dispute that it was not allowed until 1924. It has been the well-settled rule of this court to construe the homestead statute liberally in favor of the owner of the home. This statute was passed by the legislature to protect the homes of the people of this state from levy under execution except in certain cases. It must be kept in mind in the case at bar that the homestead was acquired in the year 1920; the claim of the appellee against the German government was not allowed until 1924, four years after the homestead was acquired, and the money which was paid on this claim was not paid until 1928, eight years after the homestead was acquired. A debt contracted prior to the acquisition of a homestead, within the meaning of section 10155 of the 1931 Code, is a debt which is certain and in all events payable. While the sum of money may be payable upon a contingency, yet in such a case it becomes a debt only when the contingency has happened.

It seems to us that this case is ruled by the case of Anderson v. Kyle, reported in 126 Iowa 666. At page 668 of 126 Iowa, 102 N. W. 527, this court said:

"That a remote or contingent liability attaches to the execution and delivery of a deed in view of a possible failure of title is very true. But, as we have seen, the promise to repay or reimburse which arises out of a deed covenant has relation to the time when, if ever, such covenant shall be broken by eviction or otherwise. Such is

quite a different thing from a specific debt contracted and agreed to be paid. And it is a debt contracted—that is, a fixed obligation, subject to enforcement by the processes of the law—that the statute authorizes to be satisfied by execution sale of a homestead."

The appellants say, however, that the rule in the above-cited case has been changed by the decision of this court in the case of Smith v. Andrew, reported in 209 Iowa 99, 227 N. W. 587. We find in the opinion in that case the following, at page 104 of 209 Iowa:

"The appellee places special reliance upon Anderson v. Kyle, 126 Iowa 666, 102 N. W. 527. * * * The question was whether a debt arose when the covenant of warranty was made; or whether it arose only upon the breach of the covenant and the eviction of the grantee. We held to the latter proposition. Whether right or wrong, it presents no inconsistency with our holdings in the cases above cited."

We hold, therefore, that the judgment of the lower court is right, and same must be, and it is hereby, affirmed.

ANDERSON, KINTZINGER, DONEGAN, and KINDIG, JJ., concur.