IN RE ESTATE OF JAMES A. GALVIN.

BERTEAN SPALTI, Administratrix, Appellee, v. ENOLA GALVIN et al., Appellants.

No. 47059.

OCTOBER 14, 1947.

Bump & Bump, of Des Moines, and Howard H. Myers, of Pleasantville, for appellants.

J. H. Johnson, of Knoxville, and Comfort, Comfort & Irish, of Des Moines, for appellee.

MULRONEY, J.—The claim of Enola Galvin for $10,000 was allowed against the estate of J. A. Galvin, her deceased husband.

The claim was based upon a written prenuptial contract executed on November 27, 1918, prior to their marriage on the same date, providing in part as follows:

"That the said Enola Johnston hereby waives all claim or right under statute of the laws of the State of Iowa to any part or parcel of the property of the said J. A. Galvin which otherwise would inure to her benefit by reason of the marriage contract, save and except that in the event that she shall survive him she shall receive from the proceeds of his estate the sum of Ten Thousand ($10,000.00) Dollars, which shall be received by her in lieu of dower right and any other right which she might otherwise have under the laws of the State of Iowa, and that she shall have no right, title or interest in or to any of the property of the said J. A. Galvin other than the right to receive the sum of Ten Thousand ($10,000.00) Dollars from his estate. In the event that she shall not survive him, she or her heirs, assignees or representatives shall have no interest whatsoever in his estate."

After the allowance of the claim, the executrix commenced proceedings to sell the homestead acquired by J. A. Galvin in 1919, and almost the only asset of the estate, to pay the claim. The heirs of J. A. Galvin resisted, and the single question presented is whether the obligation of the contract to pay Enola Galvin $10,000 was a debt, contracted prior to the acquisition of the homestead, within the provisions of section 561.21(1), Code, 1946, providing that a homestead may be sold to satisfy a debt "contracted prior to its acquisition." The trial court held the obligation a debt within the meaning of the statute and ordered the executrix to proceed with the sale. The decedent's heirs appeal.

■ ■ Appellants' argument is in effect that under the contract the debt did not exist until the death of James A. Galvin. But the statute permits the sale of the homestead for debts "contracted prior to its acquisition." This debt was "contracted" on the date of the contract and marriage. It is immaterial that it did not exist as a collectible debt until the death of James A. Galvin. As said in Jackson v. McKeown,

79 Colo. 447, 449, 246 P. 277, "* * * a debt, no matter when it matures, is 'contracted' whenever the agreement respecting it is made."

This is the force of our holding in Smith v. Andrew, 209 Iowa 99, 101, 103, 227 N. W. 587, 588, and Merchants Nat. Bk. v. Eyre, 107 Iowa 13, 77 N. W. 498. In the Merchants National Bank case we held the obligation of a surety, entered into prior to the acquisition of the homestead, is to be deemed a debt and the homestead acquired while the principal was solvent and not in default could be subjected to the lien of a judgment later obtained against the surety. In the Smith case there was presented the question of when the double liability imposed by statute upon the holder of bank stock originated. The stockholder contended "that the liability of the stockholder prior to the insolvency of the bank was wholly contingent, and that the same did not become a debt until such insolvency." In holding the debt originated with the purchase of the stock, we said:

"Having held, therefore, that the obligation of a stockholder to a superadded liability is in the nature of a suretyship, and is contractual, and having held that the liability of a surety is a debt, within the meaning of the homestead statute, we see no way of escape from saying that the debt evidenced by this judgment in the case at bar originated in March, 1926, with the purchase of the stock, and therefore before the acquisition of the homestead."

There is much more reason for upholding the right of a widow to take the homestead in payment of a debt which was the direct obligation of an antenuptial contract than there would be for subjecting the homestead of a bank stockholder to the payment of a statutory assessment in the event of the bank's insolvency. We reach our decision here much more readily than we could approve the result of Smith v. Andrew, supra, if the question there involved were now before us as an original proposition.

The holding of this court in Hunt, Hill & Betts v. Moore, 219 Iowa 451, 453, 258 N. W. 114, 115, presents no inconsistency with our present holding. There the judgment debtor, a survivor

of the Lusitania sinking, had signed a contract in 1916 with the Survivors' Committee authorizing the committee to employ counsel to prosecute his claim against the German government. The contract authorized the committee to fix the counsel's fee at not more than twenty per cent of the amount recovered. In 1928, the judgment debtor received $14,570.31 upon his claim and the plaintiff attorneys sought to have their judgment for twenty per cent of the recovery declared a lien against the judgment debtor's homestead acquired in 1920. In denying the relief asked for by plaintiffs, we said:

"A debt contracted prior to the acquisition of a homestead, within the meaning of section 10155 of the 1931 Code, is a debt which is certain and in all events payable. While the sum of money may be payable upon a contingency, yet in such a case it becomes a debt only when the contingency has happened."

The statement is too broad in that it holds that a debt must be one that is "in all events payable" before it will be considered a debt within the meaning of the exemption statute. To so hold would overrule the cases of Smith v. Andrew, supra, and Merchants Nat. Bk. v. Eyre, supra, which obviously was not intended, as Smith v. Andrew is cited in the Hunt opinion.

In the Hunt case the obligation to pay the attorneys was based on a contingent consideration, namely, if there was recovery on the claim. Of course, no debtor or creditor relationship could arise until the contingency that furnished the consideration for the debt occurred. Here the consideration for the promise to pay the wife $10,000 was the marriage. After the marriage, as said in Huguley v. Lanier, 86 Ga. 636, 639, 12 S. E. 922, 22 Am. St. Rep. 487, "the relation established by the covenant [antenuptial contract] was that of debtor and creditor." Only the payment of the debt was left to the happening of a contingency. When the stipulated contingency occurred, and the husband died before the wife, it is the debt created by the contract, and at the time of the marriage, that the wife collects. Insofar as the statement in the Hunt case states the debt within

898

the meaning of the statute must be one that is "in all events payable," it will be considered dictum.

The decision of the trial court is affirmed.—Affirmed.

OLIVER, C. J., and HALE, BLISS, GARFIELD, SMITH, MANTZ, and HAYS, JJ., concur.