RUDELL v. OGDENSBURG TRANSIT CO.[1]

1. CARRIERS—CONTRACT OF SHIPMENT—AGENT'S AUTHORITY.

It is only when a proposed contract with the shipping agent of a common carrier is of an unusual and extraordinary character that the shipper is put upon inquiry as to the agent's authority.

2. SAME—AGREEMENT AS TO TIME OF DELIVERY.

It is within the general authority of a carrier's shipping agent to contract with a shipper to deliver his goods at the place of destination by a stated time, allowing the usual time for the trip.

3. SAME—BILL OF LADING—CONCLUSIVENESS.

The terms of a bill of lading handed by a carrier to the shipper's clerk, and never brought to the shipper's attention, will not prevail as against a verbal contract of shipment previously made by the shipper with the carrier's authorized agent.

Error to Wayne; Carpenter, J. Submitted June 15, 1898. Decided July 12, 1898.

Case by James H. Rudell and another against the Ogdensburg Transit Company for the breach of a contract of carriage. From a judgment for defendant, plaintiffs bring error. Reversed.

Plaintiffs, commission merchants in Detroit, shipped a quantity of potatoes and onions by the defendant's line to Chicago. Plaintiffs had sold them to merchants in Chicago, at a certain price, provided they were delivered there by the 12th of July, 1894. This was during the great railroad strike, when prices for produce in Chicago were very high. Plaintiffs gave evidence tending to show that they made the contract of carriage with Mr. Chesebrough, the local agent for the defendant in Detroit, on the morning of

---

[1] Rehearing denied September 27, 1898.

July 9th; that defendant agreed to deliver them in Chicago by noon of the 12th, barring shipwreck and fire; that the goods were delivered to the defendant at the time agreed upon; that the defendant failed to deliver the goods until the 14th; that meanwhile the price had fallen; that the consignees refused to accept; and that the goods were sold at the best price obtainable, which was much less than the contract price. Defendant denied that it guaranteed to deliver at a fixed time. Mr. Chesebrough admitted informing plaintiffs that the boat would leave about 10 o'clock on the morning of the 10th; that it would arrive at Chicago within 50 hours; and that the goods were shipped on that understanding. The case was submitted to the jury, who found a verdict for plaintiffs. One of the defenses was that Mr. Chesebrough had no authority to make the contract of guaranty that the steamer would arrive at a certain time. It was stipulated that this question might be further argued upon a motion for a new trial, and that, if the court should then determine that no such authority was shown, the verdict might be set aside, and judgment rendered for the defendant, and that, if upon appeal to this court that decision was reversed, judgment might be rendered here for the plaintiffs. The court did set the verdict aside, and rendered judgment for the defendant.

*Bowen, Douglas & Whiting*, for appellants.

*Wisner & Harvey*, for appellee.

GRANT, C. J. (*after stating the facts*). The jury settled the contract in behalf of the plaintiffs. The sole question, therefore, is the authority of defendant's agent to make the contract. A shipping agent of a common carrier has general authority to make all reasonable contracts of shipment. Any undisclosed limitation does not bind the shipper. Has such an agent authority to agree to deliver goods at the place of destination at a particular time? Only when contracts are of an unusual and

extraordinary character is the shipper put to inquiry as to the agent's authority. Hutch. Carr. § 267; 5 Am. & Eng. Enc. Law (2d Ed.), 351. A guaranty to a theatrical troupe that it would arrive at a given time is held valid. *Foster* v. *Railway Co.*, 56 Fed. 434. One writer says:

"As common carriers, especially at the present day, transact the greater part, if not all, of their business with the public through agents and servants, it is plain that the public have a right to assume that they are authorized to do whatever they attempt to do." Lawson, Contracts of Carriers, § 229.

This rule does not include contracts so unusual and extraordinary that they cannot reasonably be included within the general authority. Delays sometimes occur, both on land and water. Many cases like the present and that of the theatrical troupe are constantly arising, where delivery at a certain time is essential. When the shipper and the carrier agree, through its agent, upon a date of delivery at destination which gives the usual time to make the trip, such contract cannot be held unusual or extraordinary, and is within the general authority of the agent. The carrying business of the country is mostly done by corporations, which act through agents, who, as in this case, frequently solicit business; and, when the contract is a reasonable one, it must be upheld, in the absence of notice of lack of authority.

It is urged that the customary way of carrying on the business of a common carrier is by issuing bills of lading, which constitute the contract between the parties. This custom is not conclusive of the authority of the agent, or of the reasonableness of the contracts he assumes to make. Plaintiffs testified that they knew nothing of a bill of lading in this case, and had never seen any before the trial. Defendant introduced a bill of lading, which it claims was given to plaintiffs' clerk at the time of or soon after the delivery of the goods to it. The contract was made before, and defendant could not change it by handing a receipt or bill of lading to a clerk.

The judgment is reversed, and judgment entered in this court for the plaintiffs, with costs of both courts.

The other Justices concurred.