A. STONER, Appellant, v. CHICAGO GREAT WESTERN RAILWAY COMPANY.

**Carriers:** CONTRACT OF AGENT: *Apparent powers.* It being within the apparent power of the agent to contract for delivery of a certain car at a certain place within a specified time, his contract therefor is binding on the company, the shipper not knowing the limitations on his power.

1

CHANGING CONTRACT WITH A RECEIPT. Where there is a verbal agreement of carriage, under which the shipper accepts and loads the car, it cannot be varied or modified by a receipt which the carrier's agent thereafter delivers to the shipper folded up and which the shipper, without knowledge of its contents, puts in his pocket.

2

DELAY IN SHIPMENT: *Shipper in fault.* A carrier is not liable for breach of its contract to deliver a car at a certain place at a

specified time, the delay being caused by the shipper's failure to comply with the requirement of the contract that the car be loaded in time to be sent out on a certain day.

*Appeal from Butler District Court.*—HON. J. F. CLYDE, Judge.

WEDNESDAY, OCTOBER 25, 1899.

ACTION at law to recover for damages alleged to have been caused. by breach of contract for the shipment of freight. When the evidence had been fully submitted, a motion to direct a verdict for the defendant was sustained, and judgment was rendered in its favor for costs. The plaintiff appeals.—*Affirmed.*

*M. F. Edwards* and *J. H. Scales* for appellant.

*O. C. Miller* for appellee.

ROBINSON, C. J.—In September, 1896, the plaintiff was the owner of a merry-go-round, which was in the town of Allison. He desired to have it transported to Webster City by the 22d day of the month, for the purpose of operating it there during the annual fair, which commenced on the 23d, and continued three days. He claims that the agent of the defendant at Allison verbally agreed in behalf of the defendant to transport the merry-go-round from Allison to Webster City by way of Waterloo, to make connection with and deliver to the regular local freight train over the Illinois Central Railroad at Waterloo on or before the afternoon of September 20th, thence to be transported to Webster City in the afternoon of Tuesday, September 22d; that the merry-go-round was delivered to the defendant for carriage under that agreement, but that the defendant failed to transport it over the route agreed upon; that there were unnecessary and unreasonable delays in the transportation of the merry-go-round, and on the last day of the fair it was

at Waterloo, and did not reach Webster City in time for use. The defendant denies that it received the merry-go-round for shipment to Waterloo, to be there delivered to connecting lines for transportation to Webster City, but avers that it was to be delivered to connecting lines at Waverly for transportation to Webster City. The defendant denies that a verbal agreement for the transportation of the property was made, and avers that the agreement was in writing, and fully performed on its part, and that by the terms of the agreement it was not liable for any delay in the transportation of the property by connecting lines. The district court, in sustaining the motion to direct a verdict, said: "I think on the record of this whole case, as it stands, the court would not be warranted in sustaining a verdict here on the admitted facts in the case. It seems now to be clearly shown that the property in question was not received by this company in time for any train before the train by which it was actually shipped, and that it was immediately shipped and transferred to the other line of road. If there was any damage, it wasn't through the fault or neglect of this defendant. I think that affirmatively appears now from the evidence that is uncontradicted. With that condition of the record, this motion should be sustained."

I.   There was evidence which tended to show the following: On Friday, September 18th, the plaintiff applied to the agent of the defendant at Allison for information in regard to the shipment of the merry-go-round to Webster City, telling him that, unless it could be shipped by rail so as to reach Waterloo in time for the west-bound way freight train of the next Monday morning, he would haul it across the country to Aplington, at the same time stating that he had a contract with the fair association at Webster City to run the merry-go-round at that place during the fair. The agent assured the plaintiff that he could furnish a car, and have it at Waterloo by Sunday afternoon. In answer to a suggestion of the plaintiff that it would be nearer to

ship by Hampton, the agent said that it would be "just as quick the other way, and that it would go over their line of road to Waterloo." Nothing was said in regard to shipping by way of Waverly. The agent also said that the car should be loaded and ready to go out Saturday, and the merry-go-round was loaded in a car of the defendant under the arrangement thus made with its agent. The car was hauled to Waverly, and there delivered to the Illinois Central Railroad Company in the morning of Monday, September 21st. There were no trains south on the road of that company until the next day, when the car was hauled to Waterloo. Had it been sent out from Waterloo on the first west-bound freight train, it would have arrived at Webster City at 6 o'clock in the afternoon of that day.

It was within the apparent power of the agent of the defendant to contract with the plaintiff for the delivery of the car to the connecting line at Waterloo within a specified time, and, in the absence of knowledge of the limitation of his power to bind the company by his agreement, the plaintiff had the right to rely upon it as binding upon the defendant. *Rudell v. Transit Co.,* 117 Mich. 568 (76 N. W. Rep. 380); 5 Am. & Eng. Enc. Law (2d ed.), 351; *Wood v. Railway Co.,* 68 Iowa, 491. It appears, however, that two hours after the car was loaded the plaintiff informed the agent that it was ready to be taken out, and the agent then handed him a folded paper, which he placed in his pocket. The agent did not say what it was, and the plaintiff did not read it.

The paper proved to be a receipt for the property, which contained a provision to the effect that it was to be transported on the conditions indorsed on the receipt. Among those conditions were the following: The defendant did not undertake to carry the property by any particular train, nor to be responsible for loss or damage arising from any delay or stoppage, however occasioned, but agreed to forward the property "with as reasonable dispatch as the gen-

eral business of the corporation" would permit.    It was also
provided that no station agent or clerk had authority to
alter or vary any of the conditions set out.    Did the evi-
dence show beyond controversy that the receipt and the
conditions thereon express the contract between the parties?
It is in conflict with the verbal agreement testified to by
the plaintiff and others.    It is not shown that the plaintiff
had any knowledge that the agent lacked authority to make
the representations and verbal agreement upon which the
plaintiff relies, and the burden was on the defendant to show
such knowledge, or to show that the writing was accepted
by the plaintiff as the contract.    The jury would have been
authorized to find that the defendant had failed to show such
knowledge or acceptance.    If there was a valid verbal agree-
ment, under which the plaintiff accepted and loaded the car,
the defendant could not have varied or modified it, without
the concurrence of the plaintiff, by delivering the receipt
after the car was loaded; and assent of the plaintiff to the
alleged change cannot be inferred from his acceptance of the
folded writing, the contents of which he did not know, and
of which he was not informed.    The facts in *Strohm v. Rail-
way Co.,* 21 Wis. 554, were in some respects similar to
those involved in this case, and it was there said of the
shipper:    "Having previously entered into a special verbal
agreement, he may rightfully assume, in the absence of
notice to that effect, that it is embodied in the paper or
receipt, or, at least, that the receipt contains nothing con-
trary to it.    It is in the nature of a direct fraud or cheat
for the company or its agents, after having entered into a
verbal agreement, thus wrongfully to insert a contract of
an entirely different character, and present it to the party
without directing his attention expressly to it, and procuring
his assent.    It is no answer for the company in such a case
to say that the other party should have been more diligent
and watchful, and should have detected the fraud.    So long
as he is ignorant of the new conditions, and does not assent

to them, the contract in writing is not consummated, and parol evidence may be received." See, also, *Railway Co. v. Wood,* \* *f*ex. Civ.App. \* (30 S. W. Rep. 715); *King v. Woodridge,* 34 Vt. 564. This case differs from those upon which the defendant relies. In *Mulligan v. Railway Co.,* 36 Iowa, 181, the statements of facts justify the conclusion that there was no verbal contract of carriage; that the shipper knew that the carrier relied upon the bill of lading which it delivered to him as expressing the contract; and that, knowing that such was the case, the shipper neglected to read the bill of lading. It was said that under such circumstances he could not rely upon lack of knowledge of its contents. In the cases of *Robinson v. Transportation Co.,* 45 Iowa, 470; *Garden Grove Bank v. Humeston & S. Ry. Co.,* 67 Iowa, 526, and *Hewitt v. Railway Co.,* 63 Iowa, 611, the contracts were evidenced by bills of lading, and there was no claim, as in this case, that the contracts were verbal. We conclude that whether the contract of shipment was verbal, or was expressed by the receipt and the conditions therein, was a question of fact for the determination of the jury.

II. The plaintiff testified that the verbal contract for the shipment of the merry-go-round required that it be loaded in the car in time to be sent out on Saturday, but the uncontradicted evidence shows that the car was not loaded and ready to be sent out until too late for the freight train of that day. The defendant could have sent the car to Waterloo over its own line, but there was no transfer track at that point over which the car could have been transferred to the Illinois Central track. Therefore the route over which to take the car to be placed on the Illinois Central Railway at Waterloo was to deliver it to that road at Waverly. Had the car been ready to go out on Saturday, it would have been delivered in Waverly in time to have been sent to Waterloo on Sunday, and the contract of the defendant would have been fulfilled. It

\* NOTE.—Not officially reported.—REPORTER.

thus appears that the failure of the plaintiff to perform his part of the contract was the direct cause of the delay in sending the merry-go-round to Waterloo, and he cannot base a recovery on his own wrong. We conclude that the district court properly directed a verdict for the defendant, and its judgment is AFFIRMED.