## W. G. Cox v. American Express Company, Appellant.

**Carriers:** SHIPMENT OF PROPERTY BY EXPRESS: ORAL CONTRACT: EVIDENCE. In this action against the defendant express company by the consignee of a horse shipped under an alleged oral agreement with plaintiff, the fact that the party delivering the animal to the express company signed a contract for its transportation did not prevent plaintiff from proving his oral contract, in the absence of any proof that the party delivering the animal to the company was acting as his agent; the two contracts being entirely distinct and between different parties  The evidence in this case is held sufficient to take the question of an oral contract of transportation to the jury.

**Same.** Where an express company has contracted to transport property under an oral contract with the consignee, it will not be relieved of the duty of performing such agreement by the fact that it induced the party delivering the property to the company to sign a written contract of transportation, it not being shown that such party acted as the agent of the consignee.

**Same:** NEGLIGENCE: EVIDENCE. The evidence in this action is held sufficient to take the question of defendant's negligent care of the property while in transit to the jury. ,

**Appeal:** MOTION FOR A NEW TRIAL: SCOPE OF REVIEW. Where an appeal is not taken within six months from the rendition of judgment, but within six months from the overruling of the motion for a new trial, only those questions involved in the ruling upon the motion will be reviewed.

**Gifts:** TRANSFER OF TITLE. Although a gift of property might not have been consummated prior to a delivery of the same to an express company for transportation to the consignee, under a contract made with him for shipment, the fact of such delivery for shipment operated to transfer the title.

*Appeal from Dubuque District Court.*—Hon. Robert Bronson, Judge.

SATURDAY, JANUARY 15, 1910.

REHEARING DENIED, MONDAY, APRIL 11, 1910.

ACTION for value of a thoroughbred saddle mare lost while being transported resulted in a judgment against defendant from which it appeals.—*Affirmed.*

*Lyon & Lyon,* for appellant.

*J. P. Frantzen,* and *T. J. Fitzpatrick,* for appellee.

LADD, J.—The plaintiff's daughter, Mrs. Campbell, had given him a thoroughbred mare at Utica, N. Y., and, as he was unable to make satisfactory arrangements with a freight line for transportation thereof to Dubuque, the agent of defendant at the latter place suggested that he have it shipped by the American Express Company. Negotiations resulted in defendant receiving her September 19, 1906, and she reached Chicago shortly after three o'clock on the following afternoon, too late for the outgoing train to Dubuque. The company unloaded and left her in its building near the depot until seven forty o'clock in the evening, when an employee undertook to lead her to its barns, several blocks distant. She was nervous and became frightened by automobiles and street cars, and finally, according to the employee's story, reared on the hind legs, and fell over backward on the pavement, and died. The plaintiff's claim for the value of the animal at Dubuque, less transportation charges, is based on an alleged oral agreement with defendant's agent at that place, while defendant contends that transportation was undertaken in pursuance of a written contract with plaintiff's daughter at Utica, N. Y., in which the value of the animal was limited to $75. The court instructed that, in order to warrant a verdict for the plaintiff, the jury must find that there was an oral agreement such as alleged, that the shipment was undertaken thereunder, and that

the death of the animal was due to defendant's negligence. This was tantamount to saying no recovery could be had under the alleged written contract with the daughter, and the jury was expressly so informed.

The sufficiency of the evidence to support the verdict is challenged.  The agent at Utica testified that Mrs. Campbell called and said she would like to ship a horse to

1. CARRIERS: shipment of property by express: oral contract: evidence.

her father at Dubuque, and that he explained to her that she would have to come in when it was brought to the office, and sign a release, and that, if the value was above $75, the charges would be increased; that the animal was brought in some days later when Mrs. Campbell signed the contract, and was given a duplicate, that he again explained the limitation in value and its effect on the cost of transportation; that she did not want to pay the charges and did not read the contract.  On the other hand, Mrs. Campbell testified that there was nothing said by the agent or herself concerning the value of the animal; that she informed him she had nothing to do with the shipment of the horse; that her father had made all arrangements at Dubuque for the transportation; that he then handed her the contract with directions to "sign this," which she did without reading or explanation, and did not receive a duplicate; that, when she first called, she handed the agent a letter purporting to have been written by the agent at Dubuque to one Storrs, a general agent of defendant, in which the agent requested that the animal be sent by the most direct route, saying that plaintiff had been a good patron of the company, and that plaintiff had arranged with him to have it shipped at a cost of $105; that the agent at Utica, after reading this letter, said he would look up the trains, and ascertain when the animal could be sent by the most direct route.  Both agents deny this; the one at Dubuque having written it and the one at Utica having been shown such a letter.  But both admit that the

Dubuque agent wrote a letter to the Utica agent concerning the transportation and the Utica agent that she exhibited a letter from her father, and that she might have said her father had arranged at Dubuque for the shipment of the horse.

The jury might have accepted Mrs. Campbell's testimony; and, if so, the company was advised that she had nothing to do with the transportation save to deliver the animal to the express company, and merely signed the contract because requested, and not for any purpose of her own. There is no pretense that in putting her name to the paper she was acting for plaintiff. This instrument, then, though in writing, furnished no obstacle to the introduction of oral evidence of an agreement between the plaintiff and the agent at Dubuque, for the reason, among others, that it was between the same parties. This evidence, when considered in connection with that hereafter referred to, was sufficient to authorize a finding that the transportation of the mare was undertaken in pursuance of the arrangements between the Dubuque agent and plaintiff. The latter testified that, after talking to the agent of a freight line, he had a conversation with this agent of defendant, who informed him that the charge for transporting the mare from Utica, N. Y., would be $105; that she would be placed in the express car with a portable stall and come through in the same time as a passenger, and, upon reaching Chicago, would be transferred by means of a platform; that the agent exhibited to him a couple of contracts for the carriage of race horses, but he did not read all of them; that he noticed the clause limiting the value of a horse to $75 and directed the agent's attention thereto; that the agent explained that this was a mere matter of form, and that, should the animal be killed, he would be paid the reasonable value thereof, and that he (Cox) told the agent that, if what he said was true, to go ahead and ship the mare, and that he then wrote his daughter

to deliver the mare to the express company at Utica, N. Y. The plaintiff was under the impression that the agent told him that a contract must be signed, and that he signed one. The agent testified that no contract was signed; that he told Cox his daughter would have to make the contract; that he had no authority to do so, and he denied having said anything concerning paying the reasonable value of the mare, though Cox noticed the limitation of the blank form of contracts shown him and talked of it and read the form through. The plaintiff denied that anything was said concerning his daughter signing the contract. It is manifest from this recital that whether there was an oral arrangement entered into for the carriage of this mare was for the jury. See *Stoner v. Railway,* 109 Iowa, 551.

The plaintiff was having the animal transported as both agents knew, and, if the arrangement was made and defendant undertook to carry the animal thereunder, the circumstance that the company induced 2. SAME. another not contemplated in the oral agreement to sign a contract in no way relieved it from the duty of performing its oral undertaking.

Nor can it be said that defendant was without fault in taking this animal from its building near the depot on the main thoroughfares of a great city after 3. SAME: negligence: nightfall in order to lead her to its barn. evidence. She was nervous and excitable, frightened by glaring light of automobiles, and by passing street cars, as the employee knew and the jury might well have found that ordinary prudence required that she should have been returned to the building rather than continued in the streets on the way to the barn. We are of opinion that the case was one for the jury.

II.   The appeal was taken more than six months after judgment, but less than that time after the order overruling the motion for new trial. This being so, the order

only is subject to review, but this involves all questions raised by the motion for new trial, regardless of whether ruled on previously or not. *Mueller Lumber Co. v. McCaffrey,* 141 Iowa, 730.

4. APPEAL: motion for a new trial: scope of review.

III.    The finding that there was sufficient evidence to carry the issues raised in the petition to the jury disposes of most of the errors assigned. Several rulings on the admissibility of evidence are assailed, but, were they conceded to have been erroneous, prejudice therefrom was impossible. Even if Mrs. Campbell had not consummated the gift of the mare to her father previously, the delivery to the express company at his direction, and to be shipped by it in pursuance of arrangements made with him accomplished this and effected the transfer of title to him.

5. GIFTS: transfer of title.

No other ruling requires consideration save to approve, and the judgment is *affirmed.*