BYRON W. PRESTON et al., Plaintiff, Appellees, v. H. R. HOWELL et al., Defendant, Appellees; J. H. COWNIE, Defendant, Appellant.

No. 42377.

November 20, 1934.

Rehearing Denied April 5, 1935.

Bradshaw, Schenk & Fowler, for defendant-appellant J. H. Cownie.

Howard L. Bump and Salinger, Reynolds & Myers, for plaintiffs, interveners, and bondholders' committee composed of Arthur Newman, James Hubbell, Earl Linn, J. L. Parrish, and J. B. Lichty.

Howard L. Bump, for appellees G. H. Ragsdale, E. G. Ragsdale, H. B. Ragsdale, Grace H. Goodwin, J. K. & W. H. Gilcrest

**232**

Co., Bankers Trust Co., Globe Machinery & Supply Co., L. H. Chamberlain, Des Moines Ice & Fuel Co. (Central Service Company), Des Moines Steel Co., Perkins Builders & Supply Co., Peoples Abstract Co., G. W. Marquardt Estate, O'Dea Hardware Co., and Iowa Pipe and Tile Co.

Addison M. Parker, for appellees A. C. Page, Addison M. Parker, and Ralph H. Plumb.

Cosson & Newcomb, for appellee H. C. Hargrove.

Rufus Scott, for appellee H. R. Howell.

Gillespie, Moody & Stewart, for appellees Queal Lumber Co. and Sanitary Plumbing Co. (Parnell Sims).

Henry L. Adams and George A. Kern, for appellee George A. Kern, receiver of the Commercial Building & Securities Co.

Paul H. Cunningham and Nelson Royal, for appellee Capital City Nurseries (Henry L. Merkel).

John A. Blanchard, Jr., for appellee Elmer Loucks.

W. E. Miller and D. L. Murrow, for appellee Grant McPherrin.

Gibson & Stewart, for appellee Harriett B. Sears, administratrix of W. W. Sears estate.

Judson E. Piper, for appellee Jewett Lumber Co.

KINTZINGER, J.—■■■ The Commercial Building & Securities Company was a corporation organized under the laws of Iowa, in January, 1920, with a paid-up capital stock of about $300,000. Its business was to buy, improve, and sell real estate. For this purpose the company was authorized to borrow money upon its bonds, and secure the same by mortgages and other collateral. Between the time of its organization in 1920 and 1925, the corporation incurred a bonded indebtedness of about $600,000 and issued bonds therefor. These bonds were issued in series, and when issued were fairly well secured by real estate mortgages and other collateral at their then fairly estimated value. The collateral securities for said bonds were, by an indenture of trust, placed in the hands of the Central State Bank as trustee, for the exclusive benefit of the bondholders.

. During that time the corporation also incurred an additional general indebtedness which, with interest, amounted to approximately $50,000. The claims for this indebtedness were held by general creditors of the corporation, and were represented by notes, trade acceptances, and accounts payable, all of which arose out of the purchase of materials, and for labor used in the improvement of the company's real estate.

This action involves the claims of (1) the plaintiff bondholders against the defendant directors for an alleged statutory liability for incurring a bonded indebtedness in excess of the debt limit authorized by statute, and (2) the claims of general creditors for an alleged statutory liability for incurring an indebtedness in excess of the statutory debt limit, which was two-thirds of its paid up capital stock. During the time in question, sections 8351 and 8380 of the Code of 1927 were in effect. These provide:

"8351. Such articles must fix the highest amount of indebtedness or liability to which the corporation is at any one time to be subject, which in no case, * * * shall exceed two thirds of its capital stock."

"8380. If the indebtedness of any corporation shall exceed the amount of indebtedness permitted by law, the directors and officers * * * knowingly consenting thereto shall be personally and individually liable to the creditors of such corporation for such excess."

The action for the bondholders was commenced July 29, 1930. None of the general creditors were made parties in the original action. Under the law as announced in Platner v. Hughes, 200 Iowa 1363, 206 N. W. 268, 43 A. L. R. 1141, this kind of an action is of an equitable character, in which all directors and creditors must be made parties, for the purpose of determining once and for all their rights and liabilities. After the commencement of the action the plaintiffs moved that all creditors be made parties. This motion was sustained, and the creditors came in by intervention, or as parties defendants.

The record shows that if the bonded indebtedness be considered a debt, then the corporation indebtedness was greatly in excess of the statutory limit. The securities placed in the hands of the trustee for the benefit of the bondholders were, at such times, estimated at a value fairly equal to the bonded indebtedness. During the last

few years of its existence, however, the corporation, on account of declining property values, had hard sledding. Its financial condition became gradually worse until July, 1925, when its affairs were placed in receivership.

The defendant directors held their positions as such during the following periods:

H. C. Hargrove, 1920 to January 3, 1923, inclusive.

J. H. Cownie, 1920 to January 27, 1925, inclusive.

Addison M. Parker, 1920 to January 27, 1925, inclusive.

H. R. Howell, 1920 to July 22, 1925, inclusive.

Ralph H. Plumb, June, 1920, to July 22, 1925, inclusive.

A. C. Page, February 4, 1921, to July 22, 1925, inclusive.

J. T. Blackburn, 1920 to January 5, 1921, inclusive.

Frank Cummins, January, 1925, to July 22, 1925, inclusive.

H. S. Taylor, 1920 to July 22, 1925, inclusive.

Grant McPherrin, 1920 to January 1, 1924, inclusive.

Fred W. Swanson, June, 1920, to March 28, 1924, inclusive.

Elmer Loucks, June, 1920, to January 28, 1925, inclusive.

Walter St. John, June, 1920, to July 22, 1925, inclusive.

W. W. Sears, 1920 to July 22, 1925, inclusive.

The action as to the defendants Cummins and Taylor was continued by the lower court for service; the action as to defendants McPherrin, St. John, Swanson, Sears, and Loucks was settled and dismissed under a contract not to sue; judgment for $30,191.35 in favor of certain general creditors was entered against Directors Hargrove, Cownie, Parker, Howell, Plumb, and Page, as more fully stated in a following division of this opinion. All these defendants appeal except Hargrove and Howell. There was also a judgment rendered in favor of the defendant directors upon claims of the bondholders, from which plaintiff bondholders appeal.

Directors Howell and Taylor, respectively, were also at all times president and secretary of the corporation, and, as such, were also appointed general managers of the corporation, and continued in the direct management of the company's affairs until it went into receivership in July, 1925. Aside from the managing officers of the corporation, the directors were all prominent business men engaged in other lines of business.

The record shows that the various bond issues were consented to and voted for by all of said directors during the periods, and at the times, each was on the board, as hereinabove shown.

I. The first question for consideration is the liability of the directors to the bondholders because of the bonded indebtedness of several hundred thousand dollars in excess of the alleged debt limit authorized by statute. There is some contention that the bonds do not constitute a general debt of the corporation. The indenture of trust, however, contains the following provision: "It is understood and agreed that the Company shall be liable for the payment of said bonds, in the event the collateral security deposited with said Trustees shall be, for any reason insufficient to fully pay the same."

Payment on all bonds was stopped, and they all matured on the appointment of a receiver in July, 1925. It is conceded that at that time the collateral in the hands of the trustee was grossly inadequate to pay more than a small per cent of the bonded indebtedness. It must therefore be conceded that the bonds are corporation debts, and that the debt limit authorized by law was, by the bond issues, exceeded by several hundred thousand dollars.

(1) It is contended, however, by the directors that the bondholders, in purchasing their bonds, agreed to and released the officers and directors of the corporation of and from any and all personal liability created by the statute. The bonds in question were issued under an indenture of trust, and all of the bonds contain upon their face and in the body of each bond the following reference to the provisions in the indentures of trust:

"These bonds are issued by authority of the Board of Directors of the said Company and are secured by the deposit of collateral securities with the Central State Bank, Trustee, as provided in certain Indentures of Trust, * * * *to all the provisions of which the holder hereof assents, by accepting this bond."* (Italics ours.) The indentures of trust were available for the inspection of all bondholders, and contained the following provisions: "It is understood and agreed *that the company shall be liable for the payment of said bonds,* in the event the collateral security deposited with said Trustees shall be, for any reason, insufficient to fully pay the same, *but the holder of any bond shall not have any claim based upon said bond or upon this Trust Indenture, against any incorporator, stockholder, officer or director,* past, present or future of the Company, *all such liability being by the acceptance of any bond or bonds as part of the consideration for the issuance thereof, expressly released."* (Italics ours.)

It is the settled law that one who accepts a written obligation is conclusively bound by its terms. Turnis v. Ballou, 201 Iowa 468, loc. cit. 473, 205 N. W. 746; Midland Mortg. Co. v. Rice, 197 Iowa 711, 198 N. W. 24; Martin v. Toll, 196 Iowa 388, 192 N. W. 806.

It is also the settled rule of law that if a party to a contract is able to read, has the opportunity to do so, and fails to read the contract, he cannot thereafter be heard to say that he was ignorant of its terms and conditions, for the purpose of relieving himself from its obligation. Wallace v. C., St. P., Minn. & O. Ry. Co., 67 Iowa 547, 25 N. W. 772; Blossi v. C. & N. W. Ry. Co., 144 Iowa 697, 123 N. W. 360, 26 L. R. A. (N. S.) 255; Spring Garden Ins. Co. v. Lemmon, 117 Iowa 691, 86 N. W. 35; Bonnot v. Newman, 108 Iowa 158, 78 N. W. 817; State Sav. Bank v. Deal, 200 Iowa 490, 203 N. W. 293; Garner v. Johns, 182 Iowa 684, 166 N. W. 111; Crum v. McCollum, 211 Iowa 319, loc. cit. 323, 233 N. W. 678; Houchin v. Auracher, 194 Iowa 606, 190 N. W. 3.

In Crum v. McCollum, 211 Iowa 319, loc. cit. 323, 233 N. W. 678, we said:

"It is a well-recognized rule of law in this state that, if a party is able to read and has the opportunity to do so, but omits this precaution because of false statements by the adversary as to the contents of the instrument, his negligence in failing to read the instrument will estop him from claiming that the instrument is not binding."

Plaintiffs claim that because the specific provision for a release is not set out in the bond itself, the bondholder is not bound thereby. The bonds in this case were issued under the indenture of trust, which was specifically referred to in all the bonds, by providing that "all the provisions of the Indenture of Trust are accepted and assented to by the purchaser of the bond by the acceptance thereof." (Italics ours.) The effect of such a provision is similar to one contained in a note referring to a mortgage, given to secure it, wherein the provisions of the mortgage are referred to. By reference, such provisions, for all intents and purposes, become part or parcels of the original obligation. 9 C. J. 36; Babbitt v. Read (D. C.) 215 F. 395, loc. cit. 418; Babbitt v. Read (C. C. A.) 236 F. 42, loc. cit. 44; Fidelity Trust Co. v. Washington-Oregon Corp. (D. C.) 217 F. 588; Jordan v. Kavanaugh, 63 Iowa 152, 18 N. W. 851; Clinton Bridge Works v. Kingsley, 188 Iowa 218, 175 N. W. 976; City Nat. Bank

v. Ind. School Dist., 190 Iowa 25, 179 N. W. 947; Daeges v. Beh, 207 Iowa 1063, loc. cit. 1066, 224 N. W. 80; Lamson v. Horton-Holden Hotel Co., 193 Iowa 355, loc. cit. 362, 185 N. W. 472, 26 A. L. R. 465; Deitrick v. Sinnott, 189 Iowa 1002, 179 N. W. 424; Carper v. Ridpath, 168 Iowa 22, 149 N. W. 841; Stoner v. Chicago G. W. Ry. Co., 109 Iowa 551, loc. cit. 556, 80 N. W. 569; Turnis v. Ballou, 201 Iowa 468, loc. cit. 473, 205 N. W. 746; Midland Mortgage Co. v. Rice, 197 Iowa 711, loc. cit. 714, 198 N. W. 24; Martin v. Toll, 196 Iowa 388, loc. cit. 390, 192 N. W. 806; Crum v. McCollum, 211 Iowa 319, 233 N. W. 678; Bell v. Title Trust & Guarantee Co., 292 Pa. 228, 140 A. 900, 57 A. L. R. 463; National Salt Co. v. Ingraham, 122 F. 40, 58 C. C. A. 356; McClelland v. Norfolk S. R. Co., 110 N. Y. 469, 18 N. E. 237, 1 L. R. A. 299, 6 Am. St. Rep. 397; McClure v. Oxford Twp., 94 U. S. 429, 24 L. Ed. 129.

In Babbitt v. Read (C. C. A.) 236 F. 42, loc. cit. 44, the court said:

"The plaintiff resorts, therefore, to the fact that the bonds did not incorporate the limitation, except by reference to the mortgage. Yet it has always been held that such a reference makes the provisions of the mortgage a part of the contract, as much in this case as in one where the instrument is prepared with the deliberate scrutiny of both sides. * * * It would indeed be only a fictitious protection to insist that such provisions as this should be incorporated in the bonds. *The investor who would read with so much care the whole of a bond so voluminous as it would become, were all the limitations included, would be as likely to look at the mortgage, if the bond referred to the mortgage.* (Italics ours.) * * * Those who wish in any case to read the extended text carefully have * * * the power to go to the printed mortgage, and are as likely to do so as though the bond itself contained all its limitations. Certainly we may not say that such a company is under a public duty against which it may not contract by sufficiently explicit language."

In Fidelity Trust Co. v. Washington-Oregon Corp. (D. C.) 217 F. 588, loc. cit. 601, it was held that where bonds referred to an indenture of trust containing a "no recourse" clause, the purchaser of the bond had no rights against the stockholders. In that case the court said:

"By the foregoing provisions, the right of the bondholders to have recourse to the stockholders, on account of their liability for unpaid stock, was waived."

In Bell v. Title Trust & Guarantee Co., 292 Pa. 228, 140 A. 900, loc. cit. 902, 57 A. L. R. 463, the court said:

"Where a series of railway bonds secured by a trust deed bear upon their face a clear reference to the deed, holders of such bonds are put upon inquiry by recitals and charged with notice by the terms of the deed."

.Plaintiffs in this case were all intelligent people and well able to read. They knew, or must be held to have known, *of the reference in the bond to the indenture of trust;* knowing this they also knew they had an opportunity to secure a copy of the trust deed. Their failure to read the provisions of the indenture of trust, if they did fail to read them, cannot relieve them from the obligations provided therein. A simple request to the officers of the company or the trustee would have brought the information. The record fails to show any fraud or deception in the sale of the bonds. In fact, the company believed the collateral security deposited with the trustee was amply sufficient to protect the bondholders. This court has repeatedly held that mental assent to the promises in a contract is not essential. Lamson v. Horton-Holden Hotel Co., 193 Iowa 355, loc. cit. 362, 185 N. W. 472, 26 A. L. R. 465; Carper v. Ridpath, 168 Iowa 22, loc. cit. 26, 149 N. W. 841; Stoner v. Chicago G. W. Ry. Co., 109 Iowa 551, loc. cit. 556, 80 N. W. 569; Crum v. McCollum, 211 Iowa 319, 233 N. W. 678; Code 1931, section 11275.

"It may be stated generally that, where a bond and another contract or instrument relate to and form one and the same transaction, or the bond refers to such other instrument or is conditioned for the performance of specific agreements set forth therein, such instrument with all its stipulations, limitations, or restrictions becomes a part of the bond, and the two should be read together and construed as a whole." 9 C. J. 36, section 59, citing a large number of cases.

As the indenture of trust specifically releases the directors and officers from all liability for the debts of the corporation, and as the bonds recite that all provisions of the indenture are made a part

of the bond by reference, it is our conclusion that they become and are a part of the bonds as fully as though incorporated therein.

(2) The plaintiffs also contend that the release agreement is invalid for want of consideration. It is fair to assume from the record that at the time the bonds were issued, they were fairly secured by collateral, consisting of trust deeds, mortgages, and other instruments belonging to the corporation. All of this property was delivered to the trustee for the exclusive benefit of the bondholders and, as such, were removed from the general assets of the company, from which general creditors might otherwise have been reimbursed. This was part of the consideration for the purchase of the bonds. The surrender of these securities invaded the rights of the stockholders, by taking from the corporation this great volume of assets and segregating them for the exclusive benefit of the bondholders. The directors were also stockholders, and by the surrender of their interest as such in these securities, they parted with sufficient consideration to sustain the "nonrecourse" agreement referred to in the bond.

In addition thereto, it is a well-settled rule of law that a contract for the benefit of a third party is enforceable by the beneficiary. Baker v. Bryan, 64 Iowa 561, 21 N. W. 83; Bosley v. Lammers, 157 Iowa 438, 138 N. W. 703; Marfield v. Cincinnati, D. & T. Traction Co., 111 Ohio St. 139, 144 N. E. 689, 40 A. L. R. 357; Continental Corporation v. Gowdy, 283 Mass. 204, 186 N. E. 244, loc. cit. 251, 87 A. L. R. 1039; Pratt v. Fishwild, 121 Iowa 642, loc. cit. 648, 96 N. W. 1089; McElwain v. Stewart, 193 Iowa 1334, 188 N. W. 782.

In the case of Marfield v. Cincinnati D. & T. Traction Co., 111 Ohio St. 139, 144 N. E. 689, 691, 40 A. L. R. 357, loc. cit. 361, the court said:

"The collateral security which takes away from the general creditors practically every hope of repayment out of the property of the corporation must be held to give rise to a supporting consideration in favor of the waiver."

We are satisfied that the transfer of the collateral and the corporation's agreement to pay the bonds were sufficient consideration for the "nonrecourse" agreement.

(3) It is also contended that the liability created by section 8380 is of such a nature that an agreement to waive it is contrary to public policy. Public policy is that principle of law which holds

that no person can do that which has a tendency to be injurious to the public, or against the public good. The liability created by section 8380 was not in existence prior to 1897, and that statute was repealed in 1929 (Acts 43d General Assembly, chapter 12). There was no such liability prior to 1897 and there is no such liability now. Similar statutes have been repealed by practically all the states of the country.

Although this court has not expressly passed upon this particular question, it is well to note that in nearly all the states where the question was raised, it has been uniformly held that a "nonrecourse" agreement, similar to the one in question, is not contrary to public policy. By the contract of purchase, the bondholders agreed to release the directors and officers from all personal liability. This was a matter of private contract between the purchaser and the corporation.

Under the general law of partnership, each partner is liable for the debts of the partnership. Section 8380 creates a somewhat similar liability against directors of corporations, *knowingly consenting* to the creation of debts in excess of the statutory limit. Therefore as applied to corporations, an additional liability is placed upon its directors under certain circumstances. But this is simply a legal obligation created by statute and relates to private rights of creditors. We are unable to see "how the * * * liability of a stockholder * * * can be a matter of public concern any more than the liability of a co-partner; * * * and we are not aware that it has ever been claimed that the latter liability has its foundation in public policy. It is merely a liability created by law, as it might be by contract, and is intended only for the benefit of those who may deal with corporations. It is but another fund to which the creditor may look when the social fund has been exhausted, and whether he chooses to look to it or not is a matter of no concern to the public." French v. Teschemaker, 24 Cal. 518.

The liability statute in question declares simply for an additional liability against officers and directors. It does not provide against an immunity from liability therefore. If the statute had made provisions against the validity of a contract of release from the obligations of the statute, then an agreement to release therefrom would be against public policy. There is no such provision in the statute, and there is no reason why the parties for whose benefit

it was adopted could not agree to waive it as they might waive any other legal right.

"It is well settled that creditors of a corporation may by contract release or waive all claims upon the personal liability of the stockholders for the debts of the corporation, and in the absence of fraud or deception, such a contract is enforcible. The contract may be oral as well as written. And the fact that the liability is founded on a constitutional provision makes no difference. Contracts of this character, * * * may be made without violation of any principle of public policy or constitutional law." 14 C. J. 1040, section 1622. Text-writers and the great weight of authorities support this rule. 1 Cook on Corp. (8th Ed.) section 216; 13 Fletcher on Corp. (2d Ed.) section 6422; Morawetz on Private Corp. (2d Ed.) section 871; Callanan v. Windsor, 78 Iowa 193, loc. cit. 198, 42 N. W. 652; Marfield v. Cincinnati, etc., Traction Co., 111 Ohio St. 139, 144 N. E. 689, 40 A. L. R. 357; French v. Teschemaker, 24 Cal. 518; United States v. Stanford (C. C. A.) 70 F. 346; Bush v. Robinson, 95 Ky. 492, 26 S. W. 178; Kohn v. Sacramento Electric, etc. Co., 168 Cal. 1, 141 P. 626; Babbitt v. Read (D. C.) 215 F. 395; Babbitt v. Read (C. C. A.) 236 F. 42; Monowitz v. Brackenridge (Co. Ct.) 186 N. Y. S. 686; Carnahan v. Campbell, 158 Ind. 226, 63 N. E. 384; Spitzer-Rorick Trust & Savings Bank v. Thompson, 107 Fla. 752, 143 So. 865; Robie v. Holdahl, 175 Minn. 44, 219 N. W. 945; Continental Corporation v. Gowdy, 283 Mass. 204, 186 N. E. 244, 87 A. L. R. 1039.

As somewhat supporting this theory, we said in Callanan v. Windsor, 78 Iowa 193, loc. cit. 198, 42 N. W. 652:

"We are aware of the provision of section 1082 of the Code. The primary object of those provisions was to protect creditors of the company. They should not be held to apply to a case of this kind where, by virtue of a valid agreement, to which the original creditor was a party, nothing was due or collectible on the stock of the shareholder."

"Since a statutory or constitutional provision making the stockholders of a corporation individually liable for its debts is intended solely for the benefit of creditors, it is clear that it may be waived by them, and this may be either by express agreement or by their acts. There is no liability on the part of stockholders, therefore, if

the creditor, at the time he contracted with the corporation, excluded such liability by express agreement, and such a waiver, fairly made and supported by a valid consideration, is not contrary to public policy." 13 Fletcher on Corp. 830, section 6422.

In Marfield v. Cincinnati, etc., Traction Co., 111 Ohio St. 139, 144 N. E. 689, 40 A. L. R. 357, loc. cit. 361, the court said:

"It is claimed that the liability of stockholders created by the Constitution * * * is of such a nature that any contract whereby any creditor * * * agrees to waive the secondary liability is contrary to public policy and void. * * * 'Public policy' is 'that principle of the law which holds that no subject can do that which has a tendency to be injurious to the public or against the public good.'

"While * * * freedom of contract and private dealing may be restricted by law, this power is only exercised where some positive harm would result to the people generally, or where it involves something more than a mere relinquishment of benefits secured by a constitutional or statutory provision. Examples of valid restriction are where contracts are calculated to defeat public justice or hinder competition in trade, or which affect public morals, and other matters of like nature. * * * It is difficult to see how any of these things will be affected either way by the liability or nonliability of stockholders where creditors voluntarily consent and agree to nonliability at the time the indebtedness is incurred, and especially where they receive other considerations. * * * We are not cited to a single case decided by a court of last resort where it has been directly decided that the waiver of a statutory or constitutional declaration of liability is against public policy and therefore void. On the other hand, counsel for the stockholders have cited us to numerous authorities * * * directly in point."

In Monowitz v. Brackenridge (Co. Ct.) 186 N. Y. S. 686, the court says:

"The position of the plaintiff * * * is * * * that the agreement to absolve the directors * * * is ineffective in law, as * * * inconsistent with public policy. * * * The cases * * * submitted by the * * * counsel * * * are not * * * applicable to the present case. * * * It may safely be said that the liability imposed on directors by the statute is entirely for the benefit of

persons contracting with the corporation. In a case of this character no rule of public policy is violated or disturbed when such persons, for whose benefit and protection the statute was created, waive that liability. * * * 'Parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which courts are bound to enforce. They may stipulate away statutory and even constitutional rights, * * * and all such stipulations not unreasonable, not against good morals, or sound public policy, have been and will be enforced; and generally, all stipulations made by parties for the government of their conduct, or the control of their rights, in the trial of a cause, or the conduct of a litigation, are enforced by the courts.' " (In re New York, Lackawanna & Western R. Co., 98 N. Y. 453.)

In U. S. v. Stanford, 70 F. 346, 363, 17 C. C. A. 143, the court said:

"It is well-settled law that the creditor of a corporation may, by express contract at the time the debt is incurred, waive his right to collect from the stockholders debts which the corporation may fail to pay. 'If a person chooses to deal with a partnership or joint-stock company upon the terms that its funds, and they only, shall be available to make good his demands, he cannot afterwards depart from those terms, and hold the members individually liable, as if no such restriction had been agreed to.' "

In Continental Corporation v. Gowdy, 283 Mass. 204, 186 N. E. 244, loc. cit. 249, 87 A. L. R. 1039, the court said:

"The no recourse clause is not invalid as against public policy. Generally speaking public policy requires compliance with statutes regulating the management of corporations. But whether the effect of any specific statute can be avoided by contract depends upon the purpose for which the statute was enacted. * * * 'Where laws * * * are designed solely for the protection of rights of private property, a party who may be affected can consent to a course of action which if taken against his will would not be valid,' and is applicable where * * * a party * * * agrees to discharge liabilities which may result from a course of action.

"The purpose[s] of the statute * * * are to be determined in the light of the principle that a 'statute imposing individual liability for corporate debts is to be construed strictly, and liability

is not to be extended beyond the limits prescribed by those provisions of the statute.' * * * The statutory provisions * * * are designed solely for the benefit of creditors. * * * In sustaining the validity of the no recourse clause in a bond against the contention that it was contrary to public policy it was suggested that such a clause might be in the interest of sound policy in order to reserve the stockholder's liabilities for the benefit of unsecured creditors. * * * The secondary liabilities are created by statute solely for the benefit of creditors, and creditors, or some of them, agree, so far as they are concerned, to look to the primary liability of the corporation for payment of its obligation rather than to secondary liabilities therefor. Nor do we perceive any adequate reason in public policy for limiting the effect of a no recourse clause in the case of directors to secondary liabilities based upon statutory violations occurring before the bonds were issued. * * * The statutory provisions in question are 'for the protection of rights of private property' of creditors, * * * and the no recourse clause affects only the 'rights of private property' of the bondholders who are parties thereto. * * * Clearly it is for the advantage of all persons dealing with a corporation that its directors comply with statutory requirements, but it is at least debatable whether relinquishment by bondholders of their right to enforce secondary liabilities arising out of such violations is for the advantage or disadvantage of other creditors. * * * In any event, in the absence of a legislative declaration of public policy, it cannot be said that the bondholders owe such a duty to other creditors that they cannot relinquish their purely private rights to enforce secondary liabilities of directors because such relinquishment may tend in some degree to encourage violations of statutes passed solely for the benefit of creditors. Obviously the statutes in question are not criminal in nature so that an agreement in advance to discharge secondary liabilities of directors tends to stifle prosecution for such violations. * * * No authoritative decision adverse to the result reached by us has come to our attention. Cases like Downer v. Union Land Co. of St. Paul, 113 Minn. 410, 129 N. W. 777, and Small v. Sullivan, 245 N. Y. 343, 157 N. E. 261, unlike the case at bar, deal with immunity from future fraudulent acts and are distinguishable in accordance with established principles."

In Spitzer-Rorick, etc., Bank v. Thompson, 107 Fla. 752, 143 So. 865, loc. cit. 868, the court said:

"The statute merely gives one who transacts business with a corporation an additional right against its officers and directors when the treasurer's affidavit is not filed as directed. This is a right personal to the individual which he may waive if he desires."

In Babbitt v. Read (D. C.) 215 F. 395, loc. cit. 417. the court said:

"The * * * mortgage clearly referred to any right or claim, statutory or otherwise, and the explanatory clause, 'it being expressly agreed and understood that this mortgage and the bonds secured hereby are solely corporate obligations, * * * ' made additionally plain * * * the intent of this clause. Such a clause is one quite familiar in bond issues and unless used as a part of a scheme to defraud, *it is not only not against public policy, but* * * * *is a fair and proper protection with which stockholders have the right to surround themselves.* [Italics ours.] * * * The books are full of instances where some liability, of which no one thought at the time, arises thereafter when unexpected disaster overtakes an enterprise. The 'no recourse' clause is designed to protect against the unexpected and uncontemplated. The case at bar is a striking illustration of just the kind of situation to guard against which a clause of this character is erected, and erected so plainly as to give fair notice to any one buying the bonds. Here these defendants and their associates never supposed for a moment * * * that they would be subjected to any suit for failure to pay up subscriptions. The bond issue was not overdone, competent lawyers had been employed, a competent expert had examined the property, and the day this mortgage was executed each interested party undoubtedly looked forward to a successful future for the property. To say now that the owners of these bonds, who did or could look at the property itself for their security, can brush aside the 'no recourse' clause would be to capitalize an afterthought."

In Robie v. Holdahl, 175 Minn. 44, 219 N. W. 945, the court said:

"It is settled that the creditors of a corporation may waive their right of recourse to the liability of the stockholders for the payment of a debt of the corporation." Of similar import are the other cases above cited.

In view of the substantial unanimity of the authorities support-ing this rule in other states where this question has been presented, we are constrained to hold that the waiver agreement in question was not contrary to public policy. The question involved relates more properly to a question of private rather than public rights. For the reasons hereinabove set out, we conclude that the ruling of the lower court on this branch of the case is correct, and it is our conclusion that the bondholders, under the facts in this case, have no recourse against the directors.

II. The next question for consideration relates to claims of general creditors. Although the nonrecourse agreement released the directors from personal liability for the excessive debts created by the bonds, they would be liable for any additional general in-debtedness knowingly consented to by them. The bonded debt may be considered in connection with general debts in determining the liability to general creditors. As the authorized indebtedness was exceeded by the creation of the bond issues, and as they were con-sented to by the directors and officers, it necessarily follows that they are liable for any additional general indebtedness, "knowingly consented" to by them.

The directors contend that they are not liable for any additional general indebtedness unless they knowingly consented thereto. Sec-tion 8380 provides that "if the indebtedness * * * shall exceed the amount * * * permitted by law, the directors and officers * * * *knowingly consenting thereto* shall be personally and individually liable to the creditors * * *. *for such excess.*" (Italics ours.) The directors contend that they had no knowledge of, and did not con-sent to, the creation of the additional general indebtedness, and are therefore not liable thereon. The statute creates a liability only where the directors "knowingly consent" to debts exceeding the limit permitted by law. This has been the construction placed upon the statute by our court. Hines Lumber Co. v. Marquardt, 117 N. W. 666; Parsons v. Rinard Grain Co., 186 Iowa 1017, 173 N. W. 276.

In Hines Lumber Co. v. Marquardt, supra, loc. cit. 667, we said:

"It is obvious, we think, that this statute does not provide for a recovery on account of mere inattention or negligence on part of the officers and directors sought to be charged, but that personal liability can be enforced only where consent is given to the making of the indebtedness with actual knowledge that the limit has already been reached, or is by such act being exceeded. Constructive knowl-

edge, or knowledge which might have been obtained had the defendants not been negligent, is not enough. Patterson v. Mfg. Co., 41 Minn. 84, 42 N. W. 926, 4 L. R. A. 745, 16 Am. St. Rep. 671; Lewis v. Montgomery, 145 Ill. 30, 33 N. E. 880. We have examined the record with care, and, while the evidence is abundant on which to sustain a recovery should defendants be held liable in this action for negligence and want of attention to their duties as officers and directors, there seems to be none to sustain a finding that they consented even tacitly to the contracting of indebtedness which they knew to be in excess of the authorized limit."

In Parsons v. Rinard Grain Co., 186 Iowa 1017, loc. cit. 1030, 173 N. W. 276, 280, we said:

"Did these plaintiffs knowingly consent to the creation of an indebtedness in excess of two-thirds of the paid-up capital stock? In the connection used, 'knowingly' obviously means, with knowledge that the indebtedness exceeds that permitted by law: that is, two-thirds of the capital stock. Such want of knowledge may not be inferred from mere inattention or neglect on the part of the officers and directors sought to be charged. Actual knowledge is required; constructive, or that which might be obtained by the exercise of due care, is not enough. * * * *Nor are we able to find any evidence that plaintiffs, or any of them, were aware that Neyens, as manager, bought the corn and oats * * * and issued checks * * * until long after this was done. The purchase appears to have been on the manager's own motion* [italics ours] and not at the suggestion of or to carry out the scheme of the officers or directors of the company. The worst that can be said is that these plaintiffs, with other directors, after knowing that the capital had been wiped out and debts created * * * left the manager without more definite instructions than he had been acting on, which were none at all. The neglect of the officers and directors of this company may well be condemned, for they gave little attention to the proper discharge of their duties as such, and utterly failed to appreciate their obligations toward the shareholders and the public with which the company was dealing."

In the Parsons case we quote with approval the following language from Lewis v. Montgomery, 145 Ill. 30, 33 N. E. 880, loc. cit. 884:

"The words * * * should be interpreted according to their plain and obvious meaning. * * * The liability is created only where the indebtedness of the corporation exceeds the amount of the capital stock, and is imposed only upon the directors and officers assenting to such excess of indebtedness."

It may be conceded that the directors had knowledge of the excessive indebtedness *created by the bonds,* and that in the absence of the "no recourse" agreement, they would have been liable for that excess. The obvious purpose of the statute is to make the directors personally liable only for *any excess of indebtedness knowingly consented to by them.* Their liability, for the excessive debt created by the bond issue, was waived by the bondholders and they would be liable for the additional indebtedness, provided it was *knowingly consented* to by them. Their knowledge that the debt limit had been exceeded by the bond issue would not necessarily make them liable for the additional general indebtedness unless they "knowingly consented" thereto.

"There is no rule of law which charges a director or stockholder of a corporation with actual knowledge of its business transactions merely because he is such director or stockholder." Commercial Sav. Bank v. Kietges, 206 Iowa 90, loc. cit. 98, 219 N. W. 44; Rudd v. Robinson, 126 N. Y. 113, 26 N. E. 1046, 12 L. R. A. 473, 22 Am. St. Rep. 816; 3 Cook on Corp. (6th Ed.) 727.

It can hardly be said that, because certain persons were directors when the "bonded" debt was created, their liability for all additional debts would continue indefinitely, even though such debts were created long after they ceased to be directors, and *without their knowledge and consent.* The record shows that Directors Cownie, Hargrove, and Parker were no longer on the board of directors when the debts, for which judgment was rendered, were created. Hargrove left the board in January, 1923; Cownie in January, 1925; and Parker in January, 1925. The indebtedness for which judgment was rendered was not incurred until several months thereafter as shown by the schedule set out in the following division of this opinion. Neither does the evidence show that any of said directors, except Howell, knowingly consented to the creation of such additional debts, or had any knowledge whatever about them when they were incurred. Directors Cummins and Taylor may have had such knowledge but the action was continued as to them.

The burden of proof rested upon the creditors to show that the directors sought to be charged for the additional debt knowingly consented thereto. From an examination of the evidence, it is our conclusion that this burden has not been met, as to defendants Cownie, Hargrove, Parker, Plumb, and Page. The evidence fails to show that such directors had knowledge of or consented to the creation of the debts due general creditors. It is therefore our conclusion that the Directors Plumb, Parker, Page, and Cownie, against whom judgment was rendered, are not liable for the additional general indebtedness.

No appeal from this part of the judgment was taken by the creditors in whose favor it was entered, and no appeal was taken therefrom by Directors Howell and Hargrove. The judgment against Howell and Hargrove, not being appealed from, must therefore stand.

III. Judgment was rendered against defendant Directors Page, Cownie, Hargrove, Howell, Parker, and Plumb in favor of certain creditors as follows:

| Creditor | Date of Claim | Due Date | Amount |
|---|---|---|---|
| Queal Lumber Co. | June 3, 12, and 13, 1925 | Aug. 3, 12, and 13, 1925 | $13,863.15 |
| Jewett Lumber Co. | June 7, 8, and 27, 1925 | Aug. 7, 8, and 27, 1925 | 7,158.72 |
| Globe Machinery & Supply Co. | June 8, 15, 1925 | Aug. 8, 15, 1925 | 5,976.30 |
| L. H. Chamberlain | March 25, 1925 | April 1, 1927 | 2,785.25 |
| Iowa Pipe & Tile Co. | May 16, 1925 | Aug. 16, 1925 | 407.93 |
| | | Total | $30,191.35 |

The court held that the claims of all other creditors were barred by the statute of limitations.

What has been said disposes of all questions raised except as to the liability of defendant Howell upon claims of general creditors not allowed. Howell was president of the corporation and he, with two others, were appointed managing officers thereof. He was president during its entire existence, and one of the exclusive managers of the company to whom was committed the management of its affairs during the period of its existence. It is fair to assume from the record as shown by the minute books, books of account, and other facts and circumstances that the defendant Howell, as chief managing officer of the corporation, knew of the creation of the debts due the general creditors. It is therefore our conclusion that Howell is liable for such debts of general creditors not allowed by the court, unless they are barred by the statute of limitations.

It is contended by defendants that the liability of directors in assenting to debts exceeding the statutory limit is in the nature of a penalty and that an action thereon must be commenced within two years under paragraph 3 of section 11007 of the Code, and there is some plausibility in that contention. We have held, however, in Parsons v. Rinard Grain Co., 186 Iowa 1017, loc. cit. 1031, 173 N. W. 276, that the statute providing the liability against directors under section 8380 "is not penal, but contractual, in its nature, and the consequence to the officer or director is that there is imposed on him a liability similar to that of surety for the company." As supporting this rule, see 13 Fletcher on Corp. 643; Smith v. Andrew, 209 Iowa 99, loc. cit. 103, 227 N. W. 587; Hirning v. Hamlin, 200 Iowa 1322, 206 N. W. 617. The statute of limitations for a recovery under section 8380 would therefore begin to run when the debt accrues.

Section 11007 of the Code provides that:

"Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared." Subdivision 5 of that section provides that in actions "founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, *and all other actions not otherwise provided for in this respect, within five years."* (Italics ours.)

This action grows out of a liability created by statute. It is not founded on a written instrument, it is not brought for injuries to property or relief on the ground of fraud, but is founded upon a strictly statutory liability and is therefore included within the terms of paragraph 5, which includes *"all other actions not otherwise provided for* in this respect, *within five years."*

The creditors' cause of action under the statutory liability accrued when the indebtedness due them was created. All of the creditors' claims not allowed and those allowed against Cownie and Parker accrued more than five years prior to the commencement of this action. Such was the holding of the lower court, and we think it was correct. Directors and stockholders are not liable under such statutes for claims barred by the statute of limitations. 14 C. J. 1038. The liability in this kind of an action is statutory in character, and in order to hold the officers and directors liable thereunder, the

action upon the excessive indebtedness must be brought within five years after the indebtedness was created. All actions therefore accruing more than five years prior to the commencement ·of this action, which was July 29, 1930, are therefore barred.

Other questions are raised which may have a bearing upon the claims against Directors Cummins and Taylor when presented. In view of the foregoing conclusions, a consideration of them is unnecessary at this time.

The motion to dismiss plaintiff appellees' cross-appeal is overruled.

For the reasons hereinabove set out the judgment and decree of the lower court against defendants Cownie, Parker, Page, and Plumb is hereby reversed. The judgment and decree in all other respects is affirmed and the ·case remanded for a decree in harmony herewith.—Affirmed in part; reversed in part.

MITCHELL, C. J., and STEVENS, ALBERT, EVANS, KINDIG, ANDERSON, CLAUSSEN, and DONEGAN, JJ., concur.